Dorothy L. FRANKEL

v.

John W. GARDNER, as Secretary of the Department of Health, Education and Welfare.

Civ. A. No. 40007.

United States District Court
E. D. Pennsylvania.

July 8, 1966.

---

Richard R. Block, Philadelphia, Pa., Melvin L. Wulf, (American Civil Liberties Union, New York City), for plaintiff.

J. Shane Creamer, and Joseph R. Ritchie, Asst. U. S. Attys., Benjamin C. Flannagan, U. S. Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM AND ORDER SUR PLAINTIFF'S MOTION FOR A THREE-JUDGE COURT AND FOR SUMMARY JUDGMENT AND A PERMANENT INJUNCTION; AND SUR DEFENDANT'S MOTION TO DISMISS (Document 2)

VAN DUSEN, District Judge.

On March 28, 1966, the plaintiff, Dorothy L. Frankel, instituted this action, alleging that her Constitutional rights had been violated because, although she desires to apply for hospital insurance benefits available under the Social Security Amendments of 1965 (P.L. 89–97, 79 Stat. 286, 42 U.S.C. § 1395a et seq.), she cannot obtain such benefits without signing the application form (Form SSA–18), which she refused to sign since it contains the following disclaimer statement:

"In connection with my application for hospital insurance entitlement I certify that I am not now, and during the last 12 months have not been a member of any organization which is required to register under the Internal Security Act of 1950, as amended, as a Communist-action organization, a Communist-front organization, or a Communist-infiltrated organization." [1]

Plaintiff moves for an order to convene a three-judge court pursuant to 28 U.S.C. §§ 2282 & 2284 to declare unconstitutional § 103(b) (1) [2] of the Social Security Amendments of 1965 (hereinafter referred to as "the Act"), as well as for summary judgment. In addition, plaintiff seeks a permanent injunction prohibiting the use of the disclaimer on Form SSA–18 or on any similar form. The defendant has moved to dismiss the Complaint for lack of jurisdiction over the subject matter (Document 2) and has filed affidavits [3] in support of that motion.

Admittedly the plaintiff is a member of a class which is entitled to file an application under § 103(a) of the Act and, upon approval of such application, to receive hospital insurance benefits. The disclaimer here at issue has been inserted in Form SSA–18 pursuant to § 103(b) of the Act, which provides:

"(b) The provisions of subsection (a) shall not apply to any individual who—

"(1) is, at the beginning of the first month in which he meets the require-

---

1. This disclaimer statement appeared on the August 1965 version of Form SSA–18. The latest version of Form SSA–18 contains as Item 15 thereof an inquiry to be answered yes or no: "Are you now a member of any organization which is required to register under the Internal Security Act of 1950 as a Communist-action organization, a Communist-front organization, or a Communist-infiltrated organization?" (See copy of application form attached as an exhibit to Document 2.)

2. Set forth in a note to 42 U.S.C. § 426.

3. The defendant has filed two affidavits: the first is attached to the Motion to Dismiss (Document 2) and will be referred to hereafter as Futterman Affidavit #1; the second is filed as Document 3 and will be referred to hereafter as Futterman Affidavit #2.

ments of subsection (a), a member of any organization referred to in section 210(a) (17) of the Social Security Act * * *."

Section 210(a) (17) of the Social Security Act (42 U.S.C. § 410(a) (17)) provides:

"(17) Service in the employ of any organization which is performed (A) in any quarter during any part of which such organization is registered, or there is in effect a final order of the Subversive Activities Control Board requiring such organization to register, under the Internal Security Act of 1950, as amended, as a Communist-action organization, a Communist-front organization, or a Communist-infiltrated organization, and (B) after June 30, 1956; * * *."

The benefits available to persons eligible under the Act are divided into two categories. The first category, Medicare A, basically covers hospital costs; the second, Medicare B, covers doctors' fees. Eligibility under Medicare A is in no way related to eligibility under Medicare B (Futterman Affidavit #1, par. (6)).

■■■ Plaintiff, at the suggestion of the United States Attorney, has made application without objection for Medicare B (see attached letter from plaintiff's counsel dated 4/11/66), since the application form (SSA–40A) contains no disclaimer statement.[4] Plaintiff is now objecting solely to the application form for Medicare A (Form SSA–18), which formerly contained the contested disclaimer statement and now contains the question in footnote 1. There is no time limit for filing an application for benefits available under Medicare A, and there has been no allegation that plaintiff is now requiring hospitalization, in which case the benefits of Medicare A would be of value to her. The contention of counsel for the plaintiff, even if well founded, that plaintiff suffers now from an apprehension that she may fall ill at some future time and require hospitaliza-

tion, is an insufficient allegation that enforcement of § 103(b) of P.L. 89–97 is threatened. In view of the plaintiff's refusal to accept the court's suggestion that she apply for Medicare A and cross out the disclaimer (see attached letter of 3/29/66 and paragraphs 2 & 3 of Futterman Affidavit #2), the record will not support a claim of immediate irreparable harm.

■■■ A three-judge court should not be convened where there is no present need for injunctive relief. As the court said in Brotherhood of Locomotive Fire. & E. v. Certain Carriers, etc., 118 U.S. App.D.C. 100, 331 F.2d 1020, 1022 (1964), cert. den. 377 U.S. 918, 84 S.Ct. 1181, 12 L.Ed.2d 187 (1964):

"It is well understood that a plaintiff is not entitled to a three-judge court merely because he prays for an injunction against the enforcement of a statute he claims is unconstitutional. There must at least be an allegation that enforcement is threatened and therefore imminent."

The plaintiff is free to file her application on the form currently in use (Form SSA–18 (1–66)), which contains the substance of the disclaimer at issue as question 15 (see footnote 1, infra). Failure to answer all questions on the form is not necessarily disqualifying (see Futterman Affidavit #1, paragraph 9, and SPECIAL REMINDER ITEM attached as an exhibit to Document 2). Furthermore, Futterman Affidavit #2 (Document 3) shows that in at least one case an applicant who failed to answer question 15 has been held entitled to benefits. It is also noted that of 1.1 million applications processed, no applicant has been rejected due to failure to answer question 15 (Futterman Affidavit #2).

The plaintiff contends that by filing her application and failing to answer question 15, she will be investigated. This investigation, it is further contended, has a "chilling effect" on the exercise of the plaintiff's constitutional rights and hence § 103(b) of the Act, which

---

4. See copy of Form SSA–40A attached to Futterman Affidavit #1, Document 2.

gives rise to the investigation, is unconstitutional.

The Futterman Affidavit #2 clearly shows in paragraph (2) that if an applicant fails to answer question 15, the Social Security Administration requests the Department of Justice to furnish information solely concerned with "whether or not there is any information contained in their files." There has been no showing in this case that such a request has resulted in any case in an investigation involving questioning of members of the public about an applicant's activities or associations.

On this record, there is no showing of a "chilling effect" on the exercise of the plaintiff's constitutional rights.[5] Assuming, but not deciding, that an investigation more significant than the one involved here might be unconstitutional, if the plaintiff had shown, by affidavit or otherwise, that an independent investigation by the F.B.I. or some other body into the plaintiff's affairs followed the check of the Justice Department files, the result reached here could well be different. Cf. N. A. A. C. P. v. State of Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed. 2d 1488 (1958).

■ The plaintiff's right to be free from an investigation (assuming such a right exists) does not extend to a mere check of the Justice Department's files. The characterization by counsel for the plaintiff of such a check as an "investigation" does not raise that inquiry to a condemned activity under the Constitution. The anxiety of the plaintiff that she may be investigated if she files her application without answering question 15 appears on this record to be unfounded.[6] On this record, the plaintiff's anxiety can only be regarded as the result of some imagined "chilling effect" of § 103 (b).[7]

However, if there is any indication that the applicant, having filed her application in due course,[8] will be investigated in any way (other than that described in the Futterman Affidavits) for failure to answer question 15, or if there is any delay in the processing of the application, the applicant may then promptly re-apply for a three-judge court and such re-application will be considered in the light of the record at that time.[9] After the plaintiff's application has been processed, which should be done as soon as possible, the defendant shall report the results to the court and to counsel for the plaintiff.[10]

---

5. It is noted that the record before Judge Bonsal in Weiss and Pollitzer v. Gardner, 66 Civ. 498, S.D.N.Y., 263 F.Supp. 184, opinion of May 10, 1966, may have been different than the record in this case.

6. It is noted that there is always the possibility that an applicant for Medicare may be investigated in some manner. The application form itself is in the nature of a preliminary investigation which invites further inquiry.

7. Shakespeare has aptly phrased the effects of a strong imagination on the senses (which many of us have):
   "Or in the night, imagining some fear,
   How easy is a bush suppos'd a bear!"
   Midsummer Night's Dream, Act V, Scene I, Line 4.

8. The court here is renewing its suggestion that the plaintiff file her application promptly (see attached letter to the United States Attorney dated 3/29/66).

9. It may well be that exhaustion of the usual time-taking administrative remedies is not required in a case such as this, see Weiss and Pollitzer v. Gardner, supra, at p. 186, but it is not necessary to pass on that situation at this time.

10. If there is a public policy making it desirable that the validity of § 103(b) of P.L. 89–97 be tested for its "chilling effect" on other potential applicants for Medicare benefits, this public policy is now being served by a three-judge court convened by order of Judge Bonsal in Weiss and Pollitzer v. Gardner, 66 Civ. 498, S.D.N.Y., 263 F.Supp. 184, opinion of May 10, 1966, which is considering the problem. [See attached letter from the U. S. Attorney dated 7/1/66 stating that " . . . a three-judge court sitting in the Southern District of New York heard

## ORDER

And now, July 8, 1966, it is ordered that the application that the assigned judge request the Chief Judge of the United States Court of Appeals for the Third Circuit to constitute a three-judge court under 28 U.S.C. §§ 2282 & 2284 [see Fiumara v. Texaco, Inc., 240 F. Supp. 325 (E.D.Pa.1965)] is denied, without prejudice to plaintiff's right to renew such application as indicated in the foregoing Memorandum, or if a decision filed in Weiss and Pollitzer v. Gardner, supra, or some other situation not presented by this record, justifies such renewal.

argument on June 7, 1966 in the case of Weiss and Pollitzer v. Secretary of Health, Education & Welfare."] It should be noted, however, that there is a countervailing public policy in not requiring this court, which has a 43-month median interval between institution of suit and trial (see Table C 5, p. 192 of Annual Report of the Director of the Administrative Office for the U. S. Courts covering fiscal year ending June 30, 1965), to undertake litigation unnecessary for the protection of litigants. It is further noted that Melvin L. Wulf, Esq., a member of the New York City Bar and active counsel for plaintiff in this case, is also one of plaintiff's counsel in the Weiss case, supra.