**LEGACY ALLIANCE, INC. and Legacy Alliance Committee, Plaintiff,**

v.

**Charlie CONDON, in his official capacity as Attorney General for the State of South Carolina; Richard V. Davis, in his official capacity as chairman of the State of South Carolina Ethics Commission; Jessamine Griffin, in her official capacity as commissioner of the State of South Carolina Ethics Commission; Edward Duryea, in his official capacity as commissioner of the State of South Carolina Ethics Commission; Andrew C. Marine, in his official capacity as commissioner of the State of South Carolina Ethics Commission; Raymond B. Smith, in his official capacity as commissioner of the State of South Carolina Ethics Commission; Peter C. Coggeshall, Jr., in his official capacity as commissioner of the State of South Carolina Eth-**ics Commission; Mary T. Williams, in her official capacity as commissioner of the State of South Carolina Ethics Commission; Frank B. Washington, in his official capacity as commissioner of the State of South Carolina Ethics Commission; and Richard Kent Porth, in his official capacity as commissioner of the State of South Carolina Ethics Commission, Defendants.

No. C/A 3:99–2476–17.

United States District Court, D. South Carolina, Columbia Division.

Sept. 1, 1999.

William O. Sweeny, III, Sandra Reid Boney, Sweeny, Wingate and Barrow, Columbia, SC, James Bopp Jr., Reanna S. Moore, Bopp, Coleson and Bostrom, Terre Haute, IN, for Plaintiff.

Cathy Lynne Hazelwood, State Ethics Commission, Columbia, SC, for Defendants.

## ORDER GRANTING PERMANENT INJUNCTION

JOSEPH F. ANDERSON, Jr., District Judge.

This matter is before the court on plaintiffs' motion for declaratory relief and a permanent injunction relating to the enforcement of limited sections of South Carolina's election laws, South Carolina Code § 8–13–1300 to 1520 (Supp.1998). (titled "Campaign Practices"). Plaintiffs assert that South Carolina Code §§ 8–13–1322(A), 8–13–1332(3) violate their rights under the First and Fourteenth Amendments to the United States Constitution to the extent these laws would apply to not-for-profit entities campaigning as to ballot issues.[1] These sections of the law place limits on contribution amounts (S.C.Code Ann. § 8–13–1322(A)) and the sources of those contributions (S.C.Code Ann. § 8–13–1332(3)).

On August 3, 1999, this court granted plaintiffs' request for temporary relief prohibiting enforcement of these provisions of the South Carolina elections laws. For the reasons discussed below, this court finds that plaintiffs are entitled to a declaratory judgment and permanent injunctive relief.[2]

## FACTS

Plaintiff Legacy Alliance, Inc. ("Legacy"), is a non-profit, South Carolina corporation. Its stated purpose is to "impact public policy; to promote civil, charitable and safe communities ... based upon Judeo Christian principles; and to carry out social welfare activities." Complaint Exhibit B. Legacy's entire budget comes from donations. Legacy has lobbied for legislation, including legislation banning video gambling in South Carolina.

In a special session, the General Assembly passed legislation requiring a public referendum on November 2, 1999 as to the continued legality of video gambling. Absent a majority "yes" vote, video gambling will automatically be outlawed.

---

1. Plaintiffs initially asserted, but subsequently withdrew, challenges to sections of this statute requiring registration and disclosure: S.C.Code Ann. §§ 8–13–1300(6), 8–13–1304 (Supp.1998).

2. Defendants participated in the initial hearing on the request for a temporary restraining order and subsequently filed a written memorandum after receipt of this court's order of temporary relief. With commendable candor, defendants conceded the statute was unconstitutional to the extent discussed herein. The only issue that remained was the proper form of relief.

Plaintiff Legacy Alliance Committee ("LAC") was formed by Legacy on July 21, 1999 for the stated purpose of influencing ballot measures. Most specifically, it intends to promote a "no" vote in the upcoming referendum relating to video gambling. LAC has filed a statement of organization with the Election Commission. Prior to issuance of the temporary restraining order ("TRO"), LAC had received less than $100 in contributions and had made no expenditures. The pre-TRO contributions were made by Legacy's administrative personnel. LAC has no employees of its own.

## STANDARD

This matter previously came before the court on a motion for a TRO that was granted. As required by Rule 65(b) of the Federal Rules of Civil Procedure, this court made that order effective only for the time necessary to allow briefing and oral argument.[3] Subsequent to issuance of the TRO, defendants filed a memorandum effectively conceding that the statute was unconstitutional as applied to plaintiffs and suggesting various alternative remedies. Thus, as of the time set for hearing on continuation of the preliminary injunctive relief, the motion had effectively become one for summary judgment, with neither facts nor law in dispute. Rather, the only issue in dispute was the proper form of the remedy.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn

from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

The relevant South Carolina law defines "committee" as

> an association, a club, an organization, or a group of persons which, to influence the outcome of ... a ballot measure, receives contributions or makes expenditures in excess of five hundred dollars in the aggregate during an election cycle.... "Committee" includes a ... noncandidate committee, or a committee that is not a campaign committee for a candidate but that is organized for the purpose of influencing an election.

S.C.Code Ann. § 8–13–1300(6) (Supp.1998). An election is defined to include "a ballot measure." S.C.Code Ann. § 8–13–1300(9)(d) (Supp.1998). Contributions and expenditures are both broadly defined to include the giving or receiving of anything of value, including in-kind contributions.

---

**3.** To the extent the time exceeded ten days, the additional time was with the consent of the defendants.

S.C.Code Ann. § 8–13–1300(7), (12) (Supp. 1998). It is undisputed that the activities Legacy and LAC intend to engage in bring them within the above "committee" definition.

No person is allowed to "contribute to a committee and a committee may not accept from a person contributions aggregating more than three thousand five hundred dollars in a calendar year." S.C.Code Ann. § 8–13–1322(A) (Supp.1998). A corporation or a committee of a corporation may not "solicit contributions to the corporation or committee from a person other than its shareholders, directors, executive or administrative personnel, and their families." S.C.Code Ann. § 8–13–1332(3) (Supp.1998).

Plaintiffs are concerned that the above restrictions can or will be read to prohibit actions that will hamper, if not preclude, their ability to effectively campaign as to the upcoming ballot measure. Prior to institution of this action, the South Carolina Ethics Commission (whose members are defendants in this case) advised plaintiffs that the Ethics Commission interprets the law in such a way that these concerns will be realized. Nonetheless, defendants conceded in their subsequent memorandum that this plain reading of the statute would render it unconstitutional in this limited respect.[4]

Plaintiffs contend that the limitations on the amount of contributions and on the persons from whom they may solicit contributions violate the First and Fourteenth Amendments of the United States Constitution to the extent they are applied to a

not-for-profit organization seeking to influence a ballot initiative distinct from the election of any candidate. The legal issues before this court are, therefore, very narrow. This ruling has no impact on any limitation relating to contributions to candidates or their campaigns, spending directed towards election or defeat of a candidate, or fund-raising or spending in any election by a for-profit corporation.[5]

**1. General distinctions between contributions and expenditures, candidate and ballot issue campaigns, and profit and not-for-profit entities.**

While acknowledging the need to combat improper influences in elections, the United States Supreme Court has drawn significant distinctions between the type of controls that may be imposed and the circumstances under which they may be imposed. For instance, in *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Court found that limitations on contributions to candidates were proper, while expenditure limitations in the same elections ran afoul of the First Amendment. The Court also upheld disclosure and record keeping provisions based on a narrow reading of those requirements. *Buckley*, 424 U.S. at 80–81, 96 S.Ct. 612.

As the Supreme Court noted: "The Act's contribution and expenditure limitations operate in an area of the most fundamental First Amendment activities. Discussion of public issues and debate on the qualifications of candidates are inte-

---

4. Conceding that the statute is, in the limited circumstances presented by this case, unconstitutional under this plain reading, defendants suggest that some narrow reading might allow a construction which cures the constitutional defect. Unfortunately, defendants have not offered such a construction, and this court can discern none.

5. The election laws at issue in this litigation are part of a sweeping reform package passed by the South Carolina General Assembly in response to a major statewide scandal that ultimately resulted in convictions or guilty

pleas of twenty-seven legislators and lobbyists. The primary thrust of that legislation was to severely limit contributions and gifts from lobbyists to legislators. The legislation also included limits on contributions to candidates and imposed strict reporting and disclosure requirements. Today's decision in no way affects those much-needed reform measures. This ruling is limited to contribution limits and solicitation prohibitions on not-for-profit corporations dealing with ballot measures only.

gral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression." *Id.* at 14, 96 S.Ct. 612. The Court noted that "[t]he First Amendment protects political association as well as political expression. The constitutional right of association ... stem[s] from the Court's recognition that '[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association.'" *Id.* at 15, 96 S.Ct. 612 (quoting *NAACP v. Alabama,* 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)).

In distinguishing limitations on contributions from limitations on expenditures, the Court noted that "[a] restriction on the amount of money a person or group can spend on political communication during a campaign necessarily reduces the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." *Id.* at 19, 96 S.Ct. 612. By contrast, the Court stated that "a limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication." *Buckley,* 424 U.S. at 20–21, 96 S.Ct. 612. Nonetheless, the Court recognized that in some circumstances even contribution restrictions "could have a severe impact on political dialogue if the limitations prevented candidates and political committees from amassing the resources necessary for effective advocacy." *Id.* at 21, 96 S.Ct. 612 (not finding such adverse effects under the act in question).

The Court held that "governmental 'action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny'." *Id.* at 25, 96 S.Ct. 612. To be upheld in the face of such scrutiny, "the State [must] demonstrate[ ] a sufficiently important interest and employ[ ] means closely drawn to avoid un-

necessary abridgment of associational freedoms." *Id.* at 25, 96 S.Ct. 612. Based on this analysis, the Court found an adequate showing to support the *contribution* limit based on the desire to avoid corruption and the appearance of corruption of elected officials. *Buckley,* 424 U.S. at 25–29, 96 S.Ct. 612. By contrast, *expenditure* limitations aimed at electing or defeating a candidate did not adequately meet this need to justify the infringement on free speech. *Id.* at 46–48, 96 S.Ct. 612.

The United States Supreme Court has also clearly drawn a line between limitations placed on committees advocating election or defeat of a candidate and committees advocating a position on a noncandidate ballot issue. *Compare Buckley,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (may limit contributions to candidates) *with Citizens Against Rent Control v. City of Berkeley,* 454 U.S. 290, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981) (may not limit contributions to committee formed to advocate on a ballot issue). Because the risk of corruption of a candidate does not exist as to ballot issues, even limitations on contributions cannot survive the necessary exacting scrutiny in such campaigns. *See Citizens Against Rent Control,* 454 U.S. at 296–98, 102 S.Ct. 434.

■ To survive the "exacting scrutiny" applied to First Amendment restrictions, the restrictions must bear a "relevant correlation" or "substantial relation" to these interests. *Buckley,* 424 U.S. at 69, 96 S.Ct. 612. As stated in *Citizens Against Rent Control:*

> To place ... any limit ... on individuals wishing to band together to advance their views on a ballot measure, while placing none on individuals acting alone, is clearly a restraint on the right of association.

*Citizens Against Rent Control,* 454 U.S. at 296, 102 S.Ct. 434; *see also First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (state

could not limit corporate expenditures related to a ballot issue).[6]

The Supreme Court has also distinguished between not-for-profit and for-profit corporations in addressing what restrictions or requirements may be placed on fund-raising. *See, e.g., Austin,* 494 U.S. at 661–64, 110 S.Ct. 1391 (distinguishing Chamber of Commerce from other not-for-profit corporations which could not constitutionally be limited in their fund-raising). The state's interest in controlling or limiting fund-raising and advocacy by a for-profit corporation derives from the state's grant of special powers to corporations which gives them an advantage in acquiring and retaining wealth. Such wealth might provide an unfair advantage in election campaigns. *See Austin,* 494 U.S. at 658–59, 110 S.Ct. 1391. Fund-raising and spending by not-for-profit corporations generally do not raise these concerns absent a showing that the entities are serving as conduits for otherwise legitimately prohibited or limited contributors. *See generally Austin,* 494 U.S. at 664, 110 S.Ct. 1391 (discussing conduit concern and distinguishing typical not-for-profit corporation from a Chamber of Commerce); *North Carolina Right to Life, Inc. v. Bartlett,* 168 F.3d 705, 714 (4th Cir.1999) *cert. pending* ("crucial question is not whether not-for-profit corporation has a policy against accepting corporate contributions, but whether its acceptance of those contributions means it is serving as a conduit for the type of direct spending by for-profit corporations that creates a threat to the political market place").

**2. Restrictions on contributions and expenditures**

■■■ In the case of pure issue advocacy, neither contributions nor expenditures may be limited.

**6.** Later cases have upheld reporting requirements, as well as limits on the means of fundraising used by corporations and the amounts that may be spent from the general treasury.

Whatever may be the state interest ... in regulating and limiting contributions to or expenditures of a candidate ... there is no significant state or public interest in curtailing debate and discussion of a ballot measure. Placing limits on contributions which in turn limit expenditures plainly impairs freedom of expression.

*Citizens Against Rent Control,* 454 U.S. at 299, 102 S.Ct. 434. To the extent S.C.Code Ann. § 8–13–1322(A) is applied to a non-profit committee such as Legacy or LAC in relation to a ballot measure, it would, therefore, be unconstitutional.

Similarly, the restrictions found at S.C.Code Ann. § 8–13–1332(3), limiting the persons from whom contributions may be solicited, would effectively prevent or at least drastically impair fund-raising by a not-for-profit corporation seeking to influence a ballot measure. In *FEC v. Massachusetts Citizens for Life,* 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986) *("MCFL"),* the Court rejected similar restrictions as applied to a not-for-profit corporation. After finding that the extensive reporting duties "require a far more complex and formalized organization than many small groups could manage," the Court proceeded to address restrictions on solicitation:

Restriction of solicitation of contributors to "members" vastly reduces the sources of funding for organizations with either few or no formal members, directly limiting the ability of such organizations to engage in core political speech.... Thus, while [the act] does not remove all opportunities for independent spending by organizations such as MCFL, the avenue it leaves open is more burdensome than the one it forecloses. The fact that the statute's practical effect may be to discourage protected speech is sufficient to characterize [it] as an

*See, e.g., Austin v. Michigan Chamber of Commerce,* 494 U.S. 652, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990) (discussed in text).

infringement on First Amendment activities. .
*MCFL,* 479 U.S. at 255, 107 S.Ct. 616. Because these restrictions and requirements infringed on First Amendment activities, the Court required that they be "justified by a compelling state interest." *Id.* at 256, 107 S.Ct. 616. After discussing the various justifications for placing such restrictions and requirements on for-profit corporations, the Court explained that:

> Groups such as MCFL, however, do not pose that danger of corruption. MCFL was formed to disseminate political ideas, not to amass capital. The resources it has available are not a function of its success in the economic marketplace, but its popularity in the political marketplace.... In short, MCFL is not the type of "traditional corporatio[n] organized for economic gain," ... that has been the focus of regulation of corporate political activity.

*MCFL,* 479 U.S. at 259, 107 S.Ct. 616 (also distinguishing application of rule to group which directly supported candidate campaigns). The Court ultimately rejected application of the solicitation restrictions to groups such as MCFL because "[t]he limitations on solicitation in this case ... means that nonmember corporations can hardly raise any funds at all to engage in political speech warranting the highest constitutional protection." *Id.* at 260, 107 S.Ct. 616.

Because LAC is a not-for-profit organization formed primarily to influence ballot measures on social issues and Legacy is a not-for-profit agency that will, at most, engage in similar activities, the state interest potentially advanced by applying section 8–13–1332(3) is simply not served absent a showing that plaintiffs have become conduits for contributions which would otherwise be subject to these limitations. *See Austin, supra.* No such showing is suggested.

Any other state interest is adequately served by the disclosure requirements.[7] *See, e.g., Citizens Against Rent Control,* 454 U.S. at 298, 299–300, 102 S.Ct. 434 ("The integrity of the political system will be adequately protected if contributors are identified in a public filing revealing the amounts contributed; if it is thought wise, legislation can outlaw anonymous contributions"); *First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 791–92, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (the people "may consider, in making their judgment, the source and credibility of the advocate").

## CONCLUSION

This court grants plaintiffs judgment declaring S.C.Code Ann. §§ 8–13–1322(A), 8–13–1332(3) unconstitutional to the extent they are applied to a not-for-profit organization campaigning as to a ballot issue. Defendants are hereby permanently enjoined from enforcing S.C.Code Ann. § 8–13–1322(A) (which establishes a $3,500 limit on contributions to ballot committees) and S.C.Code Ann. § 8–13–1332(3) (which prohibits non-profit political corporations and committees formed by non-profit political corporations from soliciting contributions for ballot measures from the general public) against the plaintiffs in this action.

IT IS SO ORDERED.

---

**7.** Although plaintiffs initially raised challenges to the reporting requirements found in the state's election laws, they have withdrawn those challenges. This order, therefore, does not purport to address any constitutional limits on reporting requirements.