NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4822
_____

STATE TROOPERS FRATERNAL ASSOCIATION OF NEW JERSEY, INC.,

Appellant

v.

STATE OF NEW JERSEY;
SUPERINTENDENT NEW JERSEY STATE POLICE
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-13-cv-01065)
District Judge:  Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit LAR 34.1(a)
September 12, 2014

Before: FISHER, JORDAN and HARDIMAN, *Circuit Judges*.

(Filed: September 15, 2014)
_____

OPINION
_____

HARDIMAN, *Circuit Judge*.

The State Troopers Fraternal Association of New Jersey (STFA) appeals the denial

of its request to enjoin an internal investigation of its president, New Jersey State Trooper

Christopher Burgos. Because the District Court correctly found that the union cannot succeed on the merits of its claim, we will affirm.

I

Christopher Burgos is a New Jersey state trooper and the elected president of the STFA, the union representing all New Jersey state troopers below the rank of sergeant. As president, Burgos represents the union during labor negotiations and supports union members facing internal discipline, regularly acting as a liaison between the State Police Office of Professional Standards (OPS) and union members and their counsel.

In January 2013, Burgos was notified that he was the target of an internal investigation involving an alleged leak of a confidential document. Specifically, OPS had (apparently accidentally) emailed attorney Katherine Hartman, who represented troopers in matters before OPS, a copy of a report containing the preliminary findings of an internal investigation involving a union member. Hartman, in turn, forwarded the document to Burgos to review in his role as union president—a task Burgos claims he routinely performed with similar files. Burgos then sent the document to the attorneys representing the two troopers discussed in the report.

OPS ordered Burgos to submit to an interview as part of the investigation or face possible dismissal or suspension. In response, the STFA filed a complaint in U.S. District Court for the District of New Jersey seeking to enjoin the State from investigating Burgos in either an administrative or criminal capacity. Following a hearing on February 22,

2

2013, the District Court denied the STFA's request for an injunction, but told the union it could return for further review if the interview gave rise to First Amendment concerns.

At the interview, Burgos was told he was being investigated for violating two State Police rules and regulations, including one prohibiting "unauthorized release of information." He was questioned about conversations he had with union attorneys and other union executives and asked to turn over email conversations between himself and his attorneys. He also learned in the interview that OPS was investigating him for "theft" of the document.

About two months after the interview, on April 25, 2013, the STFA filed an amended complaint that sought temporary, preliminary, and permanent injunctive relief to block any further investigation of Burgos. The STFA claimed the investigation was intended to harass the union for representing its members and to retaliate against it for disclosing a document the state found embarrassing. The STFA also argued that the investigation was chilling its president's and members' right to engage in protected First Amendment association, and contended it would cause union members to avoid placing their trust in the union president. In December 2013, some two months after a second hearing, the District Court denied the STFA's request, finding it had not satisfied the applicable standard for a preliminary or permanent injunction. The OPS, meanwhile, has continued to investigate Burgos. This appeal followed.

II[1]

On appeal, the STFA argues that the District Court erred by failing to accept its pleaded facts as true and by concluding it did not meet the requirements for injunctive relief.

As stated, the District Court conducted two hearings. After the District Court declined to grant temporary relief at the first hearing, the STFA filed an amended complaint that continued to seek "temporary, preliminary, and permanent" injunctive relief. At the second hearing, in October, counsel for the State sought clarification that only the request for permanent injunctive relief remained at issue. Counsel for the STFA seemed to ratify this understanding. See Tr. at 33 (SA 33). Nevertheless, because the District Court's opinion and order addressed all forms of injunctive relief, we will do so as well.

Preliminary injunctive relief is an "extraordinary remedy" and appropriate only in limited circumstances. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal citations and quotation marks omitted). "A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

favors such relief." *Id*. "The burden lies with the plaintiff to establish every element in its favor." *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005). A permanent injunction requires actual success on the merits. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001). "In deciding whether a permanent injunction should be issued, the court must determine if the plaintiff has actually succeeded on the merits" and, "[i]f so, the court must then consider the appropriate remedy." *ACLU of New Jersey v. Black Horse Pike Regional Bd. of Educ.*, 84 F.3d 1471, 1477 n.3 (3d Cir. 1996) (en banc) (internal quotation marks and citation omitted).

We review a district court's grant or denial of an injunction for abuse of discretion. *NAACP v. North Hudson Regional Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011). "An abuse of discretion occurs when the District Court's conclusion rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Id*. at 475–76 (internal quotation marks and citation omitted). "We do not interfere with a district court's discretionary judgments, unless it clearly erred in weighing the relevant factors and reaching a conclusion." *Id.* at 476.

III

The STFA first argues that the District Court failed to accept the facts as it pleaded them. Specifically, the union contends that the District Court accepted the State's "assumption . . . that Burgos' actions in forwarding discovery that he receives in the

ordinary course of business was somehow unauthorized" and that "the document [at issue] is a confidential document . . . not routinely disclosed until the final disposition of an individual case." STFA Br. 19. Contrary to the STFA's argument, the District Court's role is not to adjudicate the merits of the underlying dispute—i.e., whether Burgos violated department policy. Rather, the District Court must determine whether the First Amendment precludes an internal investigation into the alleged violation from even proceeding. In other words, what matters for purposes of analyzing the injunction request is not whether Burgos's actions were actually unauthorized or whether the document was actually confidential, but that the State has some basis to *believe* those things and wants to investigate. And regardless of whether Burgos is actually culpable of any misconduct, it is clear that the state is investigating him for that reason.

IV

The STFA also claims the District Court erred in determining that the union "failed to demonstrate actual success on the merits of its First Amendment claim of 'expressive association.'" STFA Br. 1. In its brief, the union argues that "the STFA and the STFA president's union activities are privileged activities protected by the First Amendment from coerced disclosure" and, further, that "[t]he First Amendment is violated when a union is compelled to reveal nonpublic, internal communications." STFA

6

Br. 26. This is an inaccurate statement of the law.[2]

The Supreme Court recognizes "'a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion . . . as an indispensable means of preserving other individual liberties.'" *Pi Lambda Phi Fraternity v. University of Pittsburgh*, 229 F.3d 435, 441 (3d Cir. 2000) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984). "Thus, there is no constitutional right to associate for a purpose that is not protected by the First Amendment." *Salvation Army v. Dep't of Community Affairs of N.J.*, 919 F.2d 183, 199 (3d Cir. 1990). "Intrusion into the internal structure or affairs of an association," like a "regulation that forces the group to accept members it does not desire," is one type of government action that may unconstitutionally burden the freedom of association. *Boy Scouts of America v. Dale*, 530 U.S. 640, 648 (2000) (quoting *Roberts*, 468 U.S. at 623).

In *Dale*, the Supreme Court analyzed the Boy Scouts' expressive association claim using a three-step test. *Pi Lambda Phi*, 229 F.3d at 442 (citing *Dale*, 530 U.S. at 648, 650, 657–58). The Court considered whether the group engaged in expressive association, then analyzed "whether the state action at issue significantly affected the group's ability to advocate its viewpoints." *Id*. (citing *Dale*, 530 U.S. at 648, 650). "Finally, it weighed the

---

[2] Similarly, the STFA's reliance in the First Amendment portion of its brief on cases involving statutory protection for union activity is misplaced.

state's interest implicated in its action against the burden imposed on the associational expression to determine if the state interest justified the burden." *Id*. (citing *Dale*, 530 U.S. at 657–58). Here, assuming that the STFA engages in expressive association, it still cannot show that the internal investigation of Trooper Burgos infringes that right.

"The second step in the *Dale* analysis involves determining whether the state action at issue significantly affected the group's ability to advocate its viewpoints." *Id*. at 445. Here again, there is no indication that the State's investigation of Burgos has significantly affected the STFA's ability to engage in protected expressive activity, or will have a chilling effect thereon. Although the STFA cites in its brief the foundational expressive association case *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), it does not explain how the investigation of Trooper Burgos is a burden on the union's right to association even remotely akin to the state of Alabama's attempts to force the NAACP to disclose its membership list in the midst of the civil rights movement.

Moreover, Burgos's status as union president does not exempt him from compliance with State Police rules and regulations. *See Pi Lambda Phi*, 229 F.3d at 445 (holding that a university was well within its power to discipline a fraternity for rules violations in a way that "directly restrict[ed] a group's non-expressive activity, even when those actions would have an indirect effect on expressive activity . . . without a constitutional violation of associational rights."). As the District Court noted, Trooper Burgos may not be the most culpable person involved in the release of the document, but

8

the possibility that an investigation may be misguided does not make it violative of the First Amendment.

The STFA failed to show either a likelihood of success or actual success on the merits of its First Amendment claim. Consequently, injunctive relief was unwarranted, and the District Court did not abuse its discretion in denying it. Accordingly, we will affirm the judgment of the District Court.