MICHIGAN DISTRICT COUNCIL # 77 OF the AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES (AFSCME), AFL–CIO, Plaintiff,

v.

CITY OF DETROIT, Defendant.

Civ. No. 7–70654.

United States District Court,
E. D. Michigan, S. D.

Sept. 1, 1977.

George B. Washington, Detroit, Mich., for plaintiff.

Anna Diggs-Taylor, Detroit, Mich., for defendant.

## OPINION

GUY, District Judge.

The court has before it a Motion to Dismiss filed by the defendant, City of Detroit. By previous order of the court, plaintiff's Motion for Preliminary Injunction was denied. This case involves an interpretation of the Public Works Employment Act of 1976 (Act), as amended, 42 U.S.C. § 6701, et seq. In the Act's declaration of policy, Congress found that constraints on state and local government budgets were requiring the reduction of employment and construction of essential capital projects while at the same time the federal government was pursuing policies to stimulate economic recovery. 42 U.S.C. § 6721(2) and (3). As a result, the Act was intended to provide state and local governments with additional financial resources so that the efforts of the federal government toward economic stimulation would not be defeated by reductions in employment, 42 U.S.C. § 6721(5), or other expenditures, 42 U.S.C. § 6721(6), by state and local governments, and/or increases in local tax rates, 42 U.S.C. § 6721(4).

The defendant was the recipient of funds under the Act. Some of the funds were originally designated by the defendant for the purchase of twenty-one (21) "one-man" trash collection trucks. Subsequently, the defendant decided to reallocate these funds to the police department. To finance the purchase of the trash collection trucks, the city authorized the utilization of general city funds. Although the plaintiff, Michigan District Council # 77 (District Council), concedes that the city rescinded its original authorization for purchase of the trash collection trucks with Act funds,

plaintiff nevertheless claims that the city's action has been a subterfuge violative of the Act's intent and purpose. In this regard, the plaintiff argues that the purchase of the trash collection trucks, either with Act funds or other city money available as a direct result of the receipt of Act funds, will ultimately result in the reduction of employees in the city's Environmental Protection Department which will result in the city violating the Act.

■ Defendant has sought dismissal of this action for several reasons: (1) court lacks subject matter jurisdiction, (2) plaintiff failed to exhaust administrative remedies, (3) plaintiff lacks standing to bring the action and (4) issue presented is not ripe for judicial review. In light of the court's disposition of this case, only summary treatment will be given to the defendant's reasons for dismissal. The court finds that there is subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. This case involves the resolution of a matter which "arises under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331(a), and involves an amount in controversy, however defined, exceeding $10,000, 28 U.S.C. § 1331(b). Plaintiff also attempts to establish jurisdiction in this court on the basis of the Administrative Procedure Act, 5 U.S.C. § 701 et. seq.; however, the United States Supreme Court has recently held that the Administrative Procedure Act does not provide an independent basis for jurisdiction in the federal court. *Califano v.*

*Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).[1]

■ It is also contended by defendant that plaintiff was under an obligation to exhaust administrative remedies which have been established to contest proposed action to be taken by the Secretary of Treasury to withhold or reduce the amount of funds received under the Act. 31 C.F.R. § 51.80, et seq.[2] However, the court's reading of these regulations and the administrative remedies they establish indicate that they were not designed to accommodate a private plaintiff claiming a violation of a federal statute by either a state or local governmental unit, but, rather, were designed to provide remedies to the state or local governmental unit whose funds may be subject to withdrawal or alteration by proposed Secretary action. Where a dispute arises between the governmental unit and the Secretary, the regulations establish administrative remedies for the resolution of the dispute and these remedies must be pursued before judicial action may be sought. Thus, since no regulation provides an administrative remedy for the plaintiff herein, it is clear that there is no requirement to exhaust administrative remedies.

■ Although defendant claims as independent reasons for dismissing this case that plaintiff lacks standing to bring this action and the issue is not ripe for judicial resolution, during oral argument it became apparent that the defendant's arguments in this regard were in essence related to the

1. In light of recent amendments to 28 U.S.C. § 1331, the Court concluded that the Administrative Procedures Act is not jurisdictional:

"As noted previously, the actual text of Section 10 of the APA nowhere contains an explicit grant of jurisdiction to challenge agency action in the federal courts. Furthermore, even the advocates of jurisdiction under the APA acknowledge that there is no basis for concluding that Congress, in enacting Section 10 of the APA, actually conceived of the Act in jurisdictional terms. Thus, the argument in favor of APA jurisdiction rests exclusively on the broad policy consideration that, given the shortcomings of federal mandamus jurisdiction, such a construction is warranted by the rational policy of affording federal judicial review of action by federal officials acting pursuant to federal law, notwithstanding the absence of the requisite jurisdictional amount. We do not find this argument to be compelling in light of Congress' apparent intention by the 1976 amendment to restructure afresh the scope of federal-question jurisdiction." (Footnotes and citations omitted) 430 U.S. 99, 105–106 (1977).

2. "Whenever the Secretary has reason to believe that a recipient government has failed to comply with any section of the Act or of the provisions of this part, and that repayment, withholding, or reduction in the amount of an entitlement of a recipient government is required, he shall give reasonable notice and opportunity of hearing to such government prior to the invocation of any sanction under the Act."

defendant's position that plaintiff was required to exhaust administrative remedies. Since the court has already concluded that plaintiff was not required to exhaust administrative remedies provided in the regulations mentioned, these additional arguments presented by the defendant must be rejected. To the extent, however, that the defendant contends that plaintiff does not have standing in a representational capacity to represent their members, the court finds this argument nonmeritorious in light of the standards for representational standing established in *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). As to the ripeness of the issue for judicial intervention, the court similarly finds the defendant's arguments unpersuasive, since the action of the defendant has progressed to that stage where it may be held that there is a genuine and immediate dispute between the parties.

Although not raised by the defendant in its precise form, the court believes that the critical issue in deciding this motion to dismiss is whether the Act implies a private cause of action for individuals aggrieved or injured by alleged violation of the Act by state or local governmental units. Private causes of action implied in federal legislation were specifically treated by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1974). In *Cort*, the Court enumerated four factors to be reviewed in determining whether a statute creates a private cause of action where such a right is not expressly given:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so

that it would be inappropriate to infer a cause of action based solely on federal law? (Emphasis in original) (Footnotes omitted). *Id.* at 78, 95 S.Ct. at 2088.

The second and third factors set forth in *Cort* are the significant and determinative factors for this case.

To aid in further explaining these two factors in *Cort*, this court is guided by the reasoning and holding in *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1973). In *Railroad Passenger*, the Court concluded that:

A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Botany Mills v. United States*, 278 U.S. 282, 289, [49 S.Ct. 129, 132, 73 L.Ed. 379] (1929). This principle of statutory construction reflects an ancient maxim—expressio unius est exclusio alterius. Since the Act creates a public cause of action for the enforcement of its provisions and a private cause of action only under very limited circumstances, this maxim would clearly compel the conclusion that the remedies created in § 307(a) are the exclusive means to enforce the duties and obligations imposed by the Act. But even the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent. *Neuberger v. Commissioner of Internal Revenue*, 311 U.S. 83, 88, [61 S.Ct. 97, 101, 85 L.Ed. 58] (1940). *Id.* at 458, 94 S.Ct. at 693.

At this point, the court in *Railroad Passenger* turned to the legislative history for an indication that an implied private cause of action was intended to be created by the Act. Upon finding no clear intent by Congress in the legislative history to create a private cause of action, the Court declined to imply one into the Act.

Under the Public Works Act involved in this case, a public cause of action is created in the Secretary of Treasury. 42 U.S.C. § 6732.[3] This section permits the Secretary, after affording reasonable notice and an opportunity to be heard, to discontinue payment under the Act to state or local governments that fail to comply substantially with the statement of assurances governments are required to file under the Act. If such governmental unit objects to the proposed action by the Secretary, there are appropriate administrative and judicial remedies available. However, this section does not provide a private right of action.

On the other hand, in limited circumstances, the Act does create private causes of action for violations of the Act. For example, Section 6727[4] prohibits discriminatory activities on the part of state or local governmental units in the utilization of funds received under the Act, and furthermore, expressly provides that an aggrieved individual shall have a private cause of action for violation of the Act pursuant to 42 U.S.C. §§ 1983 and 1985 or Title VII of the Civil Rights Act of 1964. In addition, where the Secretary finds such discriminatory conduct, funds under the Act may be withheld or temporarily suspended until the violating governmental unit assures the Secretary that such discriminatory conduct will be discontinued. Thus, where state or local governmental units have engaged in discriminatory conduct, the Act provides both a public and private remedy.

Moreover, the court also notes that Congress, on May 13, 1977, amended the Act in part to require that ten percent (10%) of all funds received by governmental units be used to assist minority business enterprises, 42 U.S.C. § 6705(f)(2), and that money received under the Act must be used for construction and other work projects that satisfy standards for accessibility for the handicapped and elderly under other applicable federal law. 42 U.S.C. § 6706. Violations of these new requirements under the Act may be remedied only by Secretary action by withholding of funds. Significantly, even though Congress clearly had an opportunity at the time of the amendment to the Act to create a private cause of action for these specific new requirements similar to those contained in the anti-discrimination provision of the Act or a general private cause of action for all Act violations, it chose not to do so. Instead, Congress clearly decided only to create a public cause of action for violations of the Act.

 Even though the statutory scheme would indicate that no private cause of action was intended to be created, a private cause of action can be implied where the clear legislative history dictates. *Railroad Passenger, supra.* In this regard, the court's own reading of the Act's legislative history, 1976 U.S.Code Cong. & Admin. News, page 1746, reveals no intention by the Congress to create a private cause of action under the Act. The legislative history is silent on the creation of a private cause of action, and merely reiterates the

---

**3.** "Whenever the Secretary, after affording reasonable notice and an opportunity for a hearing to any State or unit of local government, finds that there has been a failure to comply substantially with an assurance set forth in the statement of assurances of that State or units of local government filed under section 6725 of this title, the Secretary shall notify that State or unit of local government that further payments will not be made under this subchapter until he is satisfied that there is no longer any such failure to comply. Until he is so satisfied, no further payments shall be made under this subchapter."

**4.** "(d)(1) Any party who is injured or deprived within the meaning of section 1983 of

this title or of section 1985 of this title by any person, or two or more persons in the case of such section 1985 of this title, in connection with the administration of a payment under this subchapter may bring a civil action under such section 1983 or 1985 of this title as applicable, subject to the terms and conditions of those sections.

"(2) Any person who is aggrieved by an unlawful employment practice within the meaning of title VII of the Civil Rights Act of 1964 by any employer in connection with the administration of a payment under this subchapter may bring a civil action under section 706(f)(1) of such Act subject to the terms and conditions of such title."

Act's own express language that the Secretary is empowered to withhold funds from governmental units who fail to comply with the requirements of the Act.

The plaintiff's reliance on *Mathews v. Massell*, 356 F.Supp. 291 (N.D.Ga.1973), is misplaced. In *Mathews*, the plaintiffs were seeking to enjoin an allegedly improper allocation of Federal Revenue Sharing Act funds by the City of Atlanta. Although the court in *Mathews* concluded that plaintiffs therein had sufficient financial interest as taxpayers to have standing to contest the City of Atlanta's utilization of revenue sharing funds that might result in the forfeiture of those funds, the court did not discuss nor decide whether that Act created a private cause of action. The taxpayer plaintiffs based their cause of action on their status as taxpayers and alleged damages and injuries to themselves in that capacity. They did not look to the Federal Revenue Sharing Act to find the jurisdictional basis for their cause of action. It has already been indicated by the court that plaintiff herein has standing as a result of its interest in the dispute; however, the court finds that the dispositive issue in this case is that the Public Works Employment Act does not create a private cause of action.

Therefore, consistent with the holding in *Railroad Passenger, supra*, where the Act itself creates a general public cause of action and a private cause of action only in limited circumstances, and where there is no legislative history to the contrary, the court concludes that no private cause of action may be implied for violations of the Act, other than those specifically created by Congress. The creation of the public cause of action establishes an intent to make that remedy the exclusive one under the Act. Since no private cause of action may be implied, plaintiff has no right to raise alleged violations of the Act by the defendant. Consequently this action must be dismissed.