In the Matter of New York State Liquor Authority, Respondent, v Salem Social Club, Inc., et al., Appellants.—In a proceeding pursuant to section 123 of the Alcoholic Beverage Control Law to enjoin a violation of section 64-b of the same law, the appeal is from a judgment of the Supreme Court, Nassau County, dated February 27, 1980, which, after a hearing, granted the petition in all respects and enjoined the appellants, *inter alia,* from allowing patrons to bring alcoholic beverages into premises located at 352 Port Washington Blvd., Port Washington, New York, without first obtaining the appropriate license therefor. Judgment affirmed, with costs. The New York State Liquor Authority (hereafter the authority) commenced this proceeding to enjoin the Salem Social Club, Inc., and its officers and directors from permitting liquor to be served on the premises of the corporation in violation of section 64-b of the Alcoholic Beverage Control Law. Appellants' position was that they were not in violation of section 64-b, inasmuch as subdivision 7 thereof exempts the club because it is a duly incorporated not-for-profit social club, as defined by subdivision 9 of section 3 of the Alcoholic Beverage Control Law and section 102 of the Not-For-Profit Corporation Law. In their answer to the petition, appellants stated that when the liquor license of the Salem Inn, Inc., was canceled by the authority (and the cancellation ultimately sustained by the Court of Appeals in *Matter of Salem Inn v New York State Liq. Auth.,* 43 NY2d 713, revg 55 AD2d 913), former customers of the Inn joined together to organize a not-for-profit social club. The club's purpose is to provide a meeting place where "consenting, forewarned adults" may view "live erotic dance performances". Membership is open to persons over the age of 18 years who "comport themselves properly when on the premises." The membership fee is $20 a year if paid in advance, or $24 a year if paid in monthly installments of $2 per month. A one-time temporary membership, upon payment of $2, is permitted to allow a person to visit before committing himself to full membership. Following a hearing on the question of whether the Salem Social Club, Inc., is a bona fide, not-for-profit social club within the meaning of subdivision 7 of section 64-b and subdivision 9 of section 3 of the Alcoholic Beverage Control Law and section 102 of the Not-For-Profit Corporation Law, the trial court determined that appellants maintained no bona fide

membership, and it was thus not a club within the meaning of subdivision 7 of section 64-b. In addition the court found that the record established, by way of the testimony of one of the club's officers, that there was a distribution of income in violation of section 508 of the Not-For-Profit Corporation Law. We affirm. We observe at the outset that appellants are confusing the authority's purpose. The law permits the authority to regulate the sale and service of alcoholic beverages. Appellants are not being regulated as to the presentation of "live erotic dance performances". Appellants' disavowal of any pecuniary gain by the club is not supported by the record. Edward Akam, the president, testified that John Savage, the secretary-treasurer, operated the talent agency from which the dancing girls were obtained *and* that Savage derived a profit from the dancers. The statutes are clear that a "club", to be exempt pursuant to subdivision 7 of section 64-b of the Alcoholic Beverage Control Law, must not be operated for pecuniary gain (Alcoholic Beverage Control Law, § 3, subd 9). The realization by Savage of a profit from the activity for which the club was formed, i.e., the viewing of dancing girls, means that there is a "pecuniary gain" derived from the club's operation in contravention of the statute. In addition, such a profit is in violation of section 508 of the Not-For-Profit Corporation Law which provides that if a lawful activity involves an incidental profit, "All such incidental profits shall be applied to the maintenance * * * of the lawful activities of the corporation, and in no case shall be divided or distributed in any manner whatsoever among the members, directors, or officers of the corporation." It is also clear from the testimony that the Salem Social Club does not conform to the definition of a club in another way. A club, as defined by the relevant statute, means "an organization of persons incorporated pursuant to the provisions of the not-for-profit corporation law * * * and which does not traffic in alcoholic beverages for profit and is operated solely for a recreational * * * purpose but not for pecuniary gain" (Alcoholic Beverage Control Law, § 3, subd 9). A member of a club "shall mean a person who whether a charter member or admitted in agreement with the by-laws of the club, has become a bona fide member thereof, who maintains his membership by the payment of his annual dues in a bona fide manner in accordance with the by-laws and whose name and address is entered on the list of members" (Alcoholic Beverage Control Law, § 3, subd 9). Appellants insist that the definition of a "member" has nothing to do with whether or not the Salem Social Club is a "club". It would be absurd, in our view, to ignore the definition of the persons who comprise a "club", contained in the very same subdivision, in a determination of whether there is, in fact, a club as defined by that subdivision. The testimony of the authority's investigator Herbert Kahn, corroborated by three other investigators, was that he visited the club four times using the same false name, Bob Gross. He was not asked if he was a member, but whether he had been to the place before. When he said on his first visit that he had not, he was given a "temporary member" card; he paid $2 and signed a book. He was told that if he returned during the same month, there would be no additional fee. On the second visit, the next month, Kahn was asked if he had a member card. He produced the "temporary member" card and was told that he would get another type of card; he again paid $2 and signed the book. The new card read in part that "Bob Gross has been elected to membership and is entitled to all privileges of membership." On the third and fourth visits, Kahn said that he did not recall whether he had been on the premises before. Each time a temporary card was issued. Thus, Kahn was issued three temporary cards, each of which stated that "individuals are. permitted entry to club as temporary

members on a one-time only basis." On each of the visits Kahn brought his own alcoholic beverages. The bottle was marked with a numbered sticker corresponding to the number on the card. It was given to a barmaid who served Kahn from the bottle and charged $2.25 per drink, whether it was on the occasion when he brought in a bottle of scotch and drank "scotch on the rocks", or when he brought in a six-pack of beer and was charged $2.25 for each bottle he consumed. Whether or not the charge made is appropriate, it is clear that a "club" and a "member" as defined in the Alcoholic Beverage Control Law do not exist. There is no payment of "annual dues in a bona fide manner in accordance with the by-laws" and there is no "list" of such bona fide payees that comprises a list of members with names and addresses (see Alcoholic Beverage Control Law, § 3, subd 9). Appellants' assertion (i.e., the testimony of Akam) that only a liquor authority investigator would lie about having been at the club before does not overcome the fact that, although Kahn used the same false name each time, there was no list kept to verify that he had been there previously. In short, from the manner of entry gained by Kahn and the three other investigators who testified, it is obvious that there is no bona fide membership list. A "member" at the Salem Social Club is anyone who walks in and pays $2. It is not an organization of persons existing under prescribed rules of membership—no matter how purposefully open the membership is intended to be. The inescapable conclusion is that the club is a place open to the public at large. In that circumstance, the club is not entitled to the exemption as provided by the law inasmuch as it does not meet the statutory definition which qualifies for the exemption (see Alcoholic Beverage Control Law, § 64-b, subd 7; § 3, subd 9). Insofar as appellants contend that the membership list is protected from State scrutiny by the First Amendment (see, e.g., N. A. A. C. P. v Alabama, 357 US 449), we point out that the authority did not ask to see the list. In the face of the testimony, however, where the inference that such a list was nonexistent was very strong, appellants' failure to produce the list may be held against them. Appellants bore the burden of going forward at that point (see Richardson, Evidence [Prince, 10th ed], § 96). If appellants wanted to overcome the inference and yet not produce the list, then they should have made a showing at trial that disclosure of the list was likely to subject the members to harassment or threats of reprisal (see Buckley v Valeo, 424 US 1, 68-72; Matter of Figari v New York Tel. Co., 32 AD2d 434, 442-443). Finally, we note that the essential facts to support the trial court's decision should have been set forth by that court (see CPLR 4213, subd [b]). In the interest of judicial economy, we have made the necessary findings as supported by the record (see Fischer v Fischer, 45 AD2d 917). Hopkins, J. P., Damiani, Lazer and Cohalan, JJ., concur.