Walter J. Pellegrini, Esq. Formal Opinion Counsel No. 2002-F1 State of New York Governor's Office of Employee Relations 2 Empire State Plaza, 12th Floor Albany, New York 12223-1250
Dear Mr. Pellegrini:
You have requested an opinion on behalf of the Family Benefits Labor-Management Committee (Committee) regarding whether childcare centers located at New York State facilities may retain their not-for-profit status if they charge the general public more than State employees and SUNY students. The Governor's Office of Employee Relations (OER) has a direct interest in this matter because the not-for-profit childcare centers were established to control costs for State employees. We conclude that charging dual rates will not jeopardize the not-for-profit status of the childcare centers under the New York Not-For-Profit Corporation Law. Our conclusion is limited to the application of the New York Not-For-Profit Corporation Law. This opinion does not address the possible ramifications of charging dual rates under other laws or regulations. For example, we did not analyze whether charging dual rates would jeopardize (i) the tax-exempt status of the childcare centers under federal law or (ii) the licensing or certification of the centers as childcare centers.
As you describe the childcare centers, they are all not-for-profit corporations that were established as part of a labor-management initiative to provide childcare for New York State employees and the general public on a space-available basis. The centers are required to give priority to children of State employees. The State provides free space, limited cleaning and maintenance and some technical assistance and training for the centers' employees. Some centers also receive limited funding from Health and Safety Grants and Training Grants that are awarded by OER. Centers on SUNY campuses give priority to the children of State employees and the children of SUNY students. These campus childcare centers also receive operating funds from SUNY through an annual legislative appropriation.
The volunteer Board of Directors at each center determines the childcare rates to be charged at that center. Some charge a flat rate; some have sliding fee scales based on gross income of the user. As the average age of the State work force has increased, the employee demand for services has diminished somewhat and some centers are providing significantly more care for community children than they once did. The centers would like to establish a dual fee scale as a way of recognizing the current level of State support for the centers. The lower rate would apply to the children of State employees and, at the SUNY childcare centers, to the children of SUNY students; the higher rate would apply to the children of local community families.
New York law appears to permit such an arrangement. Section 202(a)(16) of the New York Not-For-Profit Corporation Law (N-PCL) provides in pertinent part that a not-for-profit corporation "shall have power in furtherance of its corporate purposes . . . [t]o have and exercise all powers necessary to effect any or all of the purposes for which the corporation is formed." More specifically, N-PCL § 508 grants a not-for-profit corporation the authority to charge fees and receive income for its services, but this provision also requires that any profits be used solely to support the lawful activities of the corporation:
 A corporation whose lawful activities involve among other things the charging of fees or prices for its services or products shall have the right to receive such income and, in so doing, may make an incidental profit. All such incidental profits shall be applied to the maintenance, expansion or operation of the lawful activities of the corporation, and in no case shall be divided or distributed in any manner whatsoever among the members, directors or officers of the corporation.
N-PCL § 204 similarly limits a not-for-profit corporation's authority by prohibiting "activities for pecuniary profit or financial gain, whether or not in furtherance of its corporate purposes, except to the extent that such activity supports its other lawful activities then being conducted." There is, however, no statutory prohibition of or limitation in the N-PCL on a not-for-profit corporation's ability, when it is receiving income, to charge different fees to different users of its services.
Nor have we identified any such prohibition or limitation in the relevant case law. Precedent indicates that as long as the incidental profit resulting from the operation of the lawful activities of a not-for-profit corporation is used to support the operation of the corporation's lawful activities and not distributed among its members, directors or officers, nothing in the N-PCL prevents that profit from being generated by charging dual rates to different groups of users. Compare Boodram v. NYUDowntown Hosp., 2002 N.Y. App. Div. LEXIS 903 (1st Dep't 2002) ("[i]t makes no difference that the accommodations generate a profit for defendant and no evidence is adduced to support plaintiff's bare speculation that profits are being used for the personal use of defendant's directors and officers") with New York State Liquor Authorityv. Salem Social Club, Inc., 76 A.D.2d 908, 909 (2d Dep't 1980) (where the secretary-treasurer of an alleged not-for-profit social club realized a profit "from the activity for which the purported club was formed," the profit was found to violate N-PCL § 508).[1]
We thus conclude that charging dual rates will not jeopardize the not-for-profit status of the centers under the New York Not-For-Profit Corporation Law. Our conclusion is based on the factual assumptions, which should be verified by the Committee, that (i) each center's certificate of incorporation and bylaws do not prohibit charging dual rates, (ii) any profits are used solely to support the charitable purposes of the center, and (iii) no profits from charging fees for its childcare services will be distributed to any member, director or officer of such center.
Very truly yours,
ELIOT SPITZER, Attorney General
[1] The provision of childcare services is within the centers' corporate purposes. We note that at least one court has held that the N-PCL does not prohibit a not-for-profit corporation from engaging even in activities for profit or financial gain that are not in furtherance of its corporate purposes. See Kemp's Bus Service, Inc. v.Livingston-Wyoming Chapter of NYSARC, Inc., 267 A.D.2d 1085 (4th Dep't 1999) (not-for-profit corporation permitted to run a commercial transportation service unrelated to its charitable mission because it used profits from the service to support its lawful charitable purposes).