**LIBERTARIAN PARTY OF MAINE,**
et al., Plaintiffs,

v.

**G. William DIAMOND in His Capacity
as Secretary of State, State of
Maine, Defendant.**

**Civ. No. 92–292–P–H.**

United States District Court,
D. Maine.

Aug. 26, 1992.

**2**

Glenn S. Eddy, Lewiston, Me., for plaintiffs.

H. Cabanne Howard, Asst. Atty. Gen., Augusta, Me., for defendant.

## OPINION AND ORDER

LAFFITTE, District Judge, Sitting by designation.

Before the Court is an action seeking injunctive relief against defendant G. William Diamond, the Secretary of State of Maine ("the State"). Plaintiffs, the Libertarian Party of Maine and 18 of its members ("the Party"), seek to force the State to place the names of the 18 members on the ballot for the 1992 general election. These members want to run for United States Congressman, state senator, or state representative. Plaintiffs also request that the Court declare certain provisions of Maine's electoral law to be in violation of their constitutional rights. This case presents a federal question, and this Court has jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and the First and Fourteenth Amendments of the Constitution.

## BACKGROUND

In Maine a political party nominates its candidates for the general ballot by a primary election.[1] For a candidate in Maine to get on the ballot in the primary election, he must first file a primary petition.[2] A primary petition may be signed only by voters enrolled in the candidate's party and residing in the district which the candidate seeks to represent.[3] A candidate for Representative of Congress needs a petition signed by at least 1,000 enrolled voters from that electoral division; for state senator the minimum is 100 voters, and for state representative the minimum is 25 voters.[4] A candidate who has not filed a petition to appear on the primary ballot may still be nominated at the primary election by write-in votes.[5] To qualify as a write-in nominee, however, a candidate must receive votes totalling at least twice the minimum number of signatures required for a primary petition.[6] A candidate may also be nominated directly as an independent to appear on the general ballot by petition.[7] The petition may only be signed by voters residing in the district which the

---

1. Me.Rev.Stat.Ann. tit. 21–A, § 331(1) (West Supp.1991).

2. Me.Rev.Stat.Ann. tit. 21–A, § 334 (West Supp. 1991).

3. Me.Rev.Stat.Ann. tit. 21–A, § 335(2) (West Supp.1991).

4. Me.Rev.Stat.Ann. tit. 21–A, § 335(5) (West Supp.1991).

5. Me.Rev.Stat.Ann. tit. 21–A, § 338 (West Supp. 1991).

6. Me.Rev.Stat.Ann. tit. 21–A, § 723(1)(A) (West Supp.1991).

7. Me.Rev.Stat.Ann. tit. 21–A, § 331(2)(C) (West Supp.1991). A person seeking nomination by petition must withdraw his enrollment in a political party at least three months before the filing date for the nominating petition. Me.Rev. Stat.Ann. tit. 21–A, § 353 (West Supp.1991).

candidate seeks to represent.[8]

In January of 1991 the Libertarian Party became a political party under the laws of Maine.[9] In the early part of this year the Party realized that the numbers of its members in the State's electoral districts were insufficient for the Party to collect the requisite number of signatures for their candidates' primary petitions. Accordingly, these candidates would not be able to appear on the primary ballot. To bypass the process of nomination by primary petition, the Party amended its bylaws so that it could nominate candidates at its state convention. In May of 1992 the Party held its state convention, nominated 20 candidates, and made a request to the Secretary of State that he place the names of their candidates on the primary ballots.[10] By letter dated May 22, 1992, the Secretary informed the Party that the list of candidates it had submitted could not appear on the primary ballot. The Secretary refused to place these names on the ballot both because the Party's nomination process was contrary to law and because time constraints made it impossible to make any changes in the ballot. Thus, the Party candidates could only appear on the general ballot if they satisfied the nomination by write-in requirements in section 338 of title 21–A. In the primaries none of the 18 Libertarian Party candidates who are plaintiffs in this action received the requisite number of write-in votes, and the Secretary of State refused to place their names on the general ballot.

The Party brought this action to force the Secretary of State to include the names of its candidates on the ballot. It claims that its First and Fourteenth Amendment rights are being violated by the State's electoral laws. The State counters with the argument that it has a right to limit space on its ballot to those parties that have shown a modicum of support. In a conference held on August 13, 1992, the parties agreed to an expedited schedule that would resolve the matter promptly and allow the State to meet the time constraints required for printing ballots. The Court held a hearing on this case on August 21, 1992. For the reasons set forth below, the Court denies the Party's requests for injunctive and declaratory relief.

### STANDARD

■ A state's candidate eligibility requirements have an impact on voters' basic constitutional rights. *Anderson v. Celebrezze*, 460 U.S. 780, 786, 103 S.Ct. 1564, 1568, 75 L.Ed.2d 547 (1983). The freedom to engage in association in order to advance beliefs and ideals is an inseparable aspect of the liberty that is assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech. *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958). The right of a party or a citizen to a spot on the ballot is intertwined with the rights of voters and is entitled to protection. *Lubin v. Panish*, 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974). An individual's right to vote is heavily burdened if he can choose from only two parties when there are other parties demanding a place on the ballot. *Williams v. Rhodes*, 393 U.S. 23, 31, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). The right to create new political parties derives from the First and Fourteenth Amendments and allows voters to enlarge their opportunities of expressing their political ideals. *Norman v. Reed*, —— U.S. ——, ——, 112 S.Ct. 698, 705, 116 L.Ed.2d 711, 722–23 (1992).

■ A state's ballot access laws are valid if they are necessary to further a compelling state interest. *American Party of Texas v. White*, 415 U.S. 767, 780, 94 S.Ct. 1296, 1305, 39 L.Ed.2d 744 (1974); *Storer v. Brown*, 415 U.S. 724, 729–33, 94 S.Ct. 1274, 1278–81, 39 L.Ed.2d 714 (1974). The constitutionality of a state's electoral law cannot

---

**8.** Me.Rev.Stat.Ann. tit. 21–A, § 354(2) (West Supp.1991).

**9.** Me.Rev.Stat.Ann. tit. 21–A, § 302 (West Supp. 1991).

**10.** The Party was able to. satisfy the primary petition requirements for two of its candidates for state representative. These two candidates will appear on the general ballot. The remaining 18 candidates are plaintiffs in this action.

**4**

be resolved by a simple "litmus-paper test." *Storer*, 415 U.S. at 730, 94 S.Ct. at 1279. The standard for judging these laws is the following:

> [A] court ... must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interest make it necessary to burden the plaintiff's rights.

*Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 214, 107 S.Ct. 544, 548, 93 L.Ed.2d 514 (1986) (quoting *Anderson*, 460 U.S. at 789, 103 S.Ct. at 1570).

■ States have a legitimate interest in regulating access to their ballots. *Anderson*, 460 U.S. at 788 n. 9, 103 S.Ct. at 1570 n. 9; *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184–85, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979); *Storer*, 415 U.S. at 730, 94 S.Ct. at 1279. States may seek to limit the number of candidates on a ballot in order to minimize voter confusion, reduce the chances of having a runoff election, curb "ballot flooding," and ensure that voters can make rational selections in the exercise of their franchise. *Lubin*, 415 U.S. at 712–13, 94 S.Ct. at 1318. Accordingly, a state has a vital interest in requiring that a political party seeking to be placed on the ballot must demonstrate a "significant, measurable quantum of community support." *American Party of Texas*, 415 U.S. at 782, 94 S.Ct. at 1307. *See also Anderson*, 460 U.S. at 788 n. 9, 103 S.Ct. at 1570 n. 9; *Storer*, 415 U.S. at 732–34, 94 S.Ct. at 1280–81; *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971) ("There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot. ...").

## DISCUSSION

### A.

The Party claims that its First and Fourteenth Amendment rights are being violated by Maine's electoral laws. Specifically, it claims that these laws deny its members the right to run for public office and disenfranchise voters who want to vote for Party candidates. The State argues that it has a valid interest in limiting access to the ballot to those parties who can demonstrate a modicum of support in the community. It is true that under Maine's laws, Libertarian Party candidates are unable to appear on the ballot in the 1992 general election. However, had the Party's candidates submitted primary petitions with the requisite number of signatures, they would be appearing on the ballot. Two members of the Party did in fact satisfy these requirements; their names will appear on the ballot in November.

■ The plaintiffs claim that the signature requirements for primary petitions are a denial of their right of access to the ballot. The Court finds, however, that the requirements are not so burdensome as to work a constitutional deprivation of the Party's rights. The record shows that there are approximately 876,000 registered voters in Maine. In Maine there are two Congressional seats, 35 state senate seats, and 151 state representative seats. If each electoral division has an equal number of voters, then each Congressional district would have approximately 438,000 voters, each state senate district would have approximately 25,000 voters, and each state representative district would have approximately 5,800 voters. The requirements for primary petition signatures for these three districts are 1,000, 100, and 25, respectively. Therefore, the numbers that an aspiring Libertarian candidate for each of these positions would need amount to 0.22%, 0.4%, and 0.43%, respectively, of the registered voters in each district.

The Party argues that these rules constitute a violation of its constitutional rights

because it does not have enough enrolled Party voters in each of these districts to meet the minimum requirements for placement on the primary ballots. The Court disagrees with this assessment. While the Party may not have had enough members to place its candidates on the ballot, this fact by itself is not enough to make the electoral regulations unconstitutional. Maine has a compelling interest in requiring that the Libertarian Party demonstrate that it has a "significant, measurable quantum of community support" or a "significant modicum of support" before its candidates receive spots on the ballot. The Supreme Court has held that a state could require that a non-party candidate's nominating petition be signed by at least 5% of all eligible voters, *Jenness*, 403 U.S. at 440–42, 91 S.Ct. at 1975–76, or that a small political party had to submit petitions signed by at least 1% of the total gubernatorial voters in the last general election if it wanted to nominate candidates, *American Party of Texas*, 415 U.S. at 783, 94 S.Ct. at 1307. Here, the Libertarian Party only needed to obtain signatures from less than one-half of 1% of the registered voters in each district. The Court finds that the numbers of signatures required under Maine electoral law are well justified by the State's compelling interest to require that political parties show that they have a modicum of support before they receive spots on the ballot.

■ The Court notes that section 335(2) of Title 21–A requires that only enrolled party members may sign primary petitions to nominate a candidate. The Party attacks this provision because it limits the number of people from whom it may obtain signatures. The rationale behind this type of legislation is to prevent "cross-over" raiding whereby members of one party participate in the nominating process of another in order to manipulate the outcome of the other party's primary. Preservation of the integrity of the electoral process by preventing cross-overs is a legitimate state goal. *Rosario v. Rockefeller*, 410 U.S. 752, 760–62, 93 S.Ct. 1245, 1251–52, 36 L.Ed.2d 1 (1973). *See also Anderson*, 460 U.S. at 788 n. 9, 103 S.Ct. at 1570 n. 9; *American Party of Texas*, 415 U.S. at 785–86, 94 S.Ct. at 1308. The Maine provision at issue serves this legitimate state goal. The Party claims that this provision prevents the Party from complying with the signature requirements for primary petitions. The Court disagrees. The Party is unable to obtain the requisite number of signatures because it does not have the modicum of support that the State is legitimately requiring before it is allowed on the ballot. The Party's failure to obtain access to the ballot cannot be attributed to unconstitutional electoral laws. Maine's electoral laws pose a hurdle to ballot access that is well within the heights allowed by the Constitution.

■ The Party further argues that the State cannot require that a political party increase its membership so that it can satisfy the petition requirements. In support of this proposition, it cites *Consumer Party v. Davis*, 606 F.Supp. 1008 (E.D.Pa.1985), *remanded on other grounds*, 778 F.2d 140 (3rd Cir.1985). In that case the state of Pennsylvania passed legislation substantially increasing the number of signatures required by a political party to nominate candidates in primary elections. 606 F.Supp. at 1010. The effect of the statute was to prevent plaintiff, a small political party, from participating in most primaries. *Id.* at 1016. The court held that the statute placed the party in a "no-man's land" because it was too small to comply with the new regulations for parties and ineligible for the regulations governing smaller political organizations known as "political bodies." As a result, the court held the new regulations to be unconstitutional. *Id.* at 1019–20. The case currently before the Court presents a different factual scenario. In *Consumer Party* after the plaintiff had registered as a political party, the state changed the rules of the political game, to the plaintiff's detriment. By contrast, the Libertarian Party here chose to subject itself to the Maine laws on political parties. Maine has not subsequently changed its electoral laws to the detriment of the Party.

**6**

### B.

At the hearing held on this case, the Party further argued that the laws violated its rights to equal protection. Specifically, the Party argued that while it could not get its own members on the ballot, members of non-registered parties such as the Green Party could and did get their names on the ballot by compliance with § 331(2)(C) and the terms of subchapter II [11] of Maine's electoral laws. Once again, the Court disagrees with the Party's analysis. At the hearing both sides agreed that members of non-registered political parties were able to have candidates placed on the ballot. However, pursuant to subchapter II, a candidate seeking nomination by this route must obtain twice as many signatures as those required of members of registered parties.[12]

It is true that these non-registered or independent candidates could receive signatures from members of any political party.[13] By contrast, the Party can only get its own members to sign primary petitions.[14] However, because of the differences between non-party and party candidates, the Court does not think that the requirements for each should be subject to comparison. The political party and the independent candidate approaches are distinct political entities. *Storer,* 415 U.S. at 745, 94 S.Ct. at 1286. A political party usually contemplates a statewide, ongoing organization with a unique specific character. *Id.* Moreover, a legally recognized political party may be entitled to other benefits that a non-registered party is not. At the hearing in this case, the defendant stated that a registered political party may place its candidate for president on the general election ballot merely by notifying the Secretary of State of its candidate's identity. Additionally, Maine law provides that a taxpayer may designate that any part of his state income tax refund be paid over to a registered political party.[15] These are benefits to which non-registered parties are not entitled. The Libertarian Party willingly registered itself as a political party under Maine laws. In so doing, it subjects itself to the rules regulating parties.

### CONCLUSION

For the above stated reasons, the Court holds that the challenged provisions of Maine's electoral laws do not infringe upon the plaintiffs' constitutional rights. The complaint is hereby dismissed. The Clerk shall enter judgment accordingly.[16]

---

11. Me.Rev.Stat.Ann. tit. 21–A, §§ 351–357 (West Supp.1991).

12. Me.Rev.Stat.Ann. tit. 21–A, § 354(5) (West Supp.1991).

13. Me.Rev.Stat.Ann. tit. 21–A, § 354(2) (West Supp.1991).

14. Me.Rev.Stat.Ann. tit. 21–A, § 335(2) (West Supp.1991).

15. Me.Rev.Stat.Ann. tit. 36, § 5283 (West 1990). The statute provides that each tax form shall contain designations of the amount to be paid over and a list of the political parties entitled to the contribution.

16. At a conference held on August 13, 1992, the parties agreed that the Court should rule on whether permanent injunctive relief should be granted. It was agreed that it was not necessary to consider the issue of preliminary injunctive relief. Accordingly, this decision is on the merits.