**GUERRILLA GIRLS, INC. f/k/a Guerrilla Girls, Jerilea Zempel and Erika Rothenberg, Plaintiffs,**

v.

**Donna KAZ, Guerrilla Girls on Tour, Inc. f/k/a Guerrilla Girls Theatre, Jane Does 1–19, Guerrilla Girls Broadband, Inc., Catherine Doe 1 also Known by the Pseudonym "Gertrude Stein," and Catherine Does 2–12, Defendants.**

No. 03 Civ. 4619(LLS).

United States District Court, S.D. New York.

Oct. 28, 2004.

**572**

Paul, Weiss, Rifkind, Wharton & Garrison, Theodore K. Cheng, Danielle A. Phillip, Sunny S. Park, of Counsel, New York City, for Plaintiffs.

Law Office of Barbara T. Hoffman, Barbara T. Hoffman, of Counsel, New York City, for Defendants.

## OPINION and ORDER

STANTON, District Judge.

Defendants and proposed defendant intervenors (collectively "defendants") move for leave to proceed either anonymously or by pseudonym. For the reasons that follow, the motion is denied.

### Background

Starting in 1985 a group of women artists and art professionals came together to protest restrictions on, and promote recognition of, women in the arts. They called themselves, and their informal organization, "the Guerrilla Girls." The Guerrilla Girls spread their message through various media, including posters, books and stage performances. Several of the posters and two books, *Confessions of the Guerrilla Girls* and *The Guerrilla Girls' Bedside Companion to the History of Western Art*, were created at different times from 1989 to 1997 and copyrighted under the group's name.

Shortly after their founding, the Girls decided to maintain personal anonymity in their presentations, in order to direct "attention to the group's message, rather than to the individuals involved." First Amended Cmplt. ¶ 18. Each member adopted a pseudonym of a prominent deceased female artist. They wore gorilla masks when making public appearances "to keep the focus on the issues, rather than personalities." Def. Mem. at 6. Each new member of the Guerilla Girls was given a flyer about the group. Under the heading "Anonymity" the flyer stated:

One of your first tasks as a Guerrilla Girl will be to choose a code name of a dead woman artist. These code names are important for distinguishing between individual members of the group in public situations such as lectures and interviews. They also frequently serve a pedagogical function, for encounters with people who don't know your artist provide the opportunity to remedy the biases of history which under- and mis-represent white women and people of color. The ongoing anonymity of the Girls IS VERY IMPORTANT! It allows for our ability to critique an institution of which many of us are a part. But mainly, it allows for the focus to be on the issues, rather than our personalities or our own work.

"Stein" Aff. Exhibit A at 1 (capitalization in original).

By the time of this lawsuit three distinct off-shoot groups of the original Guerrilla Girls had been incorporated—plaintiffs Guerrilla Girls, Inc. and defendants Guerrilla Girls on Tour, Inc. and Guerrilla Girls Broadband, Inc. The extent of overlap among the groups' members is unclear from the submissions.

The complaint includes allegations of trademark infringement, trademark dilution, unfair competition, and copyright infringement. Underlying each claim are issues concerning the current status of the original unincorporated Guerrilla Girls group, and the authorship and ownership of numerous copyrighted works including posters and the books *Confessions of the Guerrilla Girls* and *The Guerrilla Girls' Bedside Companion to the History of Western Art*. Plaintiffs contend that when Guerrilla Girls, Inc. was formed, the original unincorporated Guerrilla Girls association ceased to exist. They claim that Guerrilla Girls, Inc. is the successor-in-interest to all property which belonged to the members of the unincorporated association, including the copyrighted works. They also claim individually to be the true authors of the works. Defendants reject those claims, and assert that (1) the original Guerrilla Girls group continues to exist today, (2) defendants are original, past and present members of it, (3) the works at issue are the product of collaborative efforts to which they

contributed, and (4) they are the rightful owners of the property and copyrights at issue.

In the present application, defendants move for leave to proceed anonymously or by their pseudonyms.

### Discussion

The Federal Rules of Civil Procedure require that "Every action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a); *see also* Rule 10(a) (complaint shall "include the names of all the parties").

■ "The intent of the rule is to provide all parties with the identities of their adversaries, as well as to protect the public's legitimate interest in knowing the facts at issue in court proceedings." *Free Speech v. Reno*, No. 98 Civ. 2680, 1999 WL 47310, at *1, 1999 U.S. Dist. LEXIS 912, at *3–4 (S.D.N.Y. Feb. 1, 1999). The Federal Rules "provide no exception that allows parties to proceed anonymously or under fictitious names such as initials." *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir.2001). However, in "exceptional cases," *Doe v. City of New York*, 201 F.R.D. 100, 102 (S.D.N.Y.2001) (dictum) (plaintiff could not proceed anonymously in civil rights suit), or "special circumstances," *EW v. New York Blood Center*, 213 F.R.D. 108, 110 (E.D.N.Y.2003) (plaintiff who contracted Hepatitis B from blood transfusion may proceed anonymously), a court may in its discretion permit a party to proceed anonymously or by pseudonym. Such motions are usually granted in cases that deal with matters of the "utmost intimacy." *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y.1996) (refusing to allow a sexual assault victim to proceed anonymously in her civil suit against her attackers).

■ When evaluating a request by a party to proceed anonymously or by pseudonym courts consider numerous factors, including "whether identification would put the [affected party] at risk of suffering physical or mental injury." *EW v. New York Blood Center*, 213 F.R.D. 108, 111 (E.D.N.Y.2003). "Courts should not permit parties to proceed · pseudonymously just to protect the parties' professional or economic life." *Doe v. United Services Life Insurance Co.*, 123 F.R.D. 437, 439 fn. 1 (S.D.N.Y.1988) (citing privacy cases involving abortion, birth control, transsexuality, mental illness, and welfare of illegitimate children which were allowed to proceed anonymously).

■ Here, the only injury that defendants allege they will suffer if they are forced to reveal their true identities is economic injury, and they do not make clear either the nature of the harm or the likelihood that it will occur. For example, Catherine Doe 1 a/k/a "Gertrude Stein" alleges generally that revealing the identity of the defendants would jeopardize "the jobs of individuals who are still employed at institutions that were attacked, such as The Whitney Museum of American Art." "Stein" Aff. ¶ 19. No particulars of any such individual are offered, nor any indication whether she was employed at the institution when it was attacked, or was a member of the Guerrilla Girls at the time, or took part in the "attack", or why her job would now be at risk.

The most specific allegations of injury come from "Meret Oppenheim" and "Stein." "Oppenheim" claims that she has "a highly visible career as a visual artist and art critic and revealing my identity would compromise my current position in the art world." "Oppenheim" Decl. ¶ 17. "Stein" claims:

> The effectiveness of the operations of the Girls and Broadband would be effectively diminished if we could not continue to carry out our activities anonymously. I am an important and principled figure in the non-profit world. My organization is the recipient of many grants from the federal, state and city governments. I believe that the work that my organization does and its fund raising efforts would be severely jeopardized if my true identity were revealed.

"Stein" Decl. ¶ 15.

While those prophecies of jeopardy may be realistic, we are left with no idea what damage is threatened, how serious the risk is, which acts by a Guerrilla Girl justify this fear, when those acts were done and why they invite retribution. Without such support, the threat of injury is guesswork lack-

ing facts or foundation. What does seem clear is that the jeopardy is purely economic, and directed to "Stein's" organization, not to herself. While "Oppenheim" says disclosure would "compromise" her position, there is no indication of what her position is, or how and why it would be compromised. The other affidavits offered by the defendants simply contain the statement, "I would be severely injured in my activities and in speaking out if it were known that I was a Guerrilla Girl." No explanation or supporting evidence is given.

On this record, plaintiffs' speculation that "Based on the renown and celebrity of the original Guerrilla Girls, association with the group would likely have a positive effect on Movants" (Pl. Mem. at 12–13) seems equally likely. It finds support in other portions of "Stein's" affidavit:

> In the beginning, the individuals and institutions we attacked attempted to discredit us and criticize our tactics and ideology. Because of our direct attacks on institutions and the affiliation of many of our members with such institutions, members of our group would have suffered enormous injury to professional reputation, disadvantage to employment opportunities and reprisals. Those who make the waves and are perceived as "difficult" or troublemakers do not succeed in the art world. The mystery surrounding our identities has attracted attention and support. We have become international celebrities among artists and art students because we dared to speak up about inequities in our field during a time when it was unfashionable. Portfolios of our posters have been collected by major institutions such as The Museum of Modern Art, the Getty Museum, the New York Public Library, and the Library of Congress, to name a few. Thousands of our individual supporters own copies of them.

"Stein" Aff. at ¶¶ 11–12.

Indeed, it appears fear of reprisal and protection of each member's identity were not the main reasons the group decided to remain anonymous and adopt pseudonyms. The flyer distributed to new members, stated that maintaining anonymity and adopting

pseudonyms of prominent deceased female artists allowed the group to distinguish between the members at public appearances, educate the public about deceased female artists, and critique the art world they inhabited, but "mainly, it allows for the focus to be on the issues, rather than our personalities or our own work." "Stein" Aff. Exhibit A at 1.

In *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Supreme Court held that Alabama could not compel the NAACP "to reveal to the State's Attorney General the names and addresses of all its Alabama members and agents, without regard to their positions or functions in the Association," *id.* at 451, 78 S.Ct. at 1166, because such disclosure would likely adversely affect the NAACP and its members' ability to "pursue their collective effort to foster beliefs which they admittedly have the right to advocate, in that it may induce members to withdraw from the Association and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure." *Id.* at 463, 78 S.Ct. at 1172. In that case, disclosure of the NAACP's membership list did not have a substantial bearing on the issues the litigation sought to resolve. *Id.* at 464, 78 S.Ct. at 1173. There are many similar cases.

In *Doe v. 2TheMart.com Inc.*, 140 F.Supp.2d 1088 (W.D.Wash.2001), the court quashed a subpoena seeking the identity of non-parties who had made derogatory comments about the defendant in an internet chatroom. The non-parties' identities were immaterial, because any effect their statements made upon investors took place without knowledge of their identities.

Here, there is no government seeking disclosure of the identities of all of the current and past members of the Guerrilla Girls. Rather, plaintiffs (private individuals) "seek only the names of those members who purport to claim ownership in the copyrighted works at issue and otherwise seek to intervene in this action." Pl. Mem. at 17. The only identities that must be revealed here are those of persons in court asserting private

rights of ownership, and those whose evidence is necessary in resolving the disputes.

The identities of the parties here has a substantial bearing on the issues and are necessary in determining the copyright and trademark ownership rights asserted by each side. This litigation raises questions such as: Does the original Guerrilla Girls unincorporated organization still exist today? If so, are its members individuals who were members at the time of origination of the copyrighted works? If so, which present members participated in creation of which of the works? Did those members transfer their individual rights in the particular copyrighted work to one of the off-shoot groups?

In order to answer such questions accurately, and to ensure that the resulting judgment will be given its proper *res judicata* effect, one must use the natural names of the litigants and those persons whose evidence affects those determinations.

Evidence already submitted highlights the problems pseudonyms might pose in the present action, and the confusion it can produce. At least two women use the pseudonym "Gertrude Stein", and nine women are referred to simply as "Guerrilla Girl." *See* Chart attached to Hoffman Affirmation dated May 27, 2004. One woman cannot remember "her Guerrilla Girl pseudonym" so she has adopted the name "Chansonetta Stanley Emmons" for this litigation. Hoffman 2nd Decl. ¶ 9. Other women "changed their minds about their pseudonyms" and adopted new ones part of the way through their association with the Guerrilla Girls. "Stein" Decl. ¶ 18. Plaintiffs and defendants have conflicting accounts of the involvement of "Romaine Brooks" (Susan Doe 4) and "Zora Neale Hurston" (Susan Doe 5) in this litigation. The woman that plaintiff Erika Rothenberg knows as "Romaine Brooks" informed her in March 2004 that she had not agreed to participate in the present litigation (Rothenberg Decl. ¶¶ 4–5), but the defendants have submitted an authorization dated October 2003 by "Romaine Brooks" permitting them to include her in it. (Hoffman Decl. Exhibit A

at 4). Similarly, in March 2004 Rothenberg spoke to the woman she knows as "Zora Neale Hurston" and was told that "Hurston" had not agreed to sue (Rothenberg Decl. ¶¶ 6–7), but defendants have submitted an authorization dated October 2003 (Hoffman Decl. Exhibit A at 5) and a declaration dated June 2004 ("Zora Neale Hurston" Decl.) from "Zora Neale Hurston" in support of her involvement in the litigation. To conduct a trial in such an atmosphere, all the while using only pseudonyms, promises trouble and confusion.

Finally, the Guerrilla Girls themselves appear to have contemplated that disclosure of their true identities would become necessary in the event of legal disputes, when they negotiated the contracts for their two copyrighted books, *Confessions of the Guerrilla Girls* and *The Guerrilla Girls' Bedside Companion to the History of Western Art.* Each contract contains the following clause:

> Should a claim be made against [publisher] relating to any of the posters which appear in the Work, and should [publisher] advise [their counsel] that it requires the true identity of the artists and authors who created and prepared the subject poster to properly defend the claim, then [their counsel] will reveal to [publisher] the true identity of the artists and authors who created and prepared the subject poster. [Publisher] will use reasonable efforts to maintain the confidentiality of such true identity of the artists and authors, but only to the extent that it does not prejudice its ability to defend the claim.

Zempel Decl.[1] Exhibit 25 at 14–15 and Exhibit 29 at 1–2.

### *Conclusion*

On the evidence submitted, the Guerrilla Girls' primary motivation in maintaining their anonymity and adopting pseudonyms was less to protect individual members, and more to promote and focus attention on the group's message and work. There is no substantiated showing of harm that individu-

---

1. Dated May 25, 2004 and submitted in support of contemporaneous motion to disqualify defendants' counsel.

als will incur by proceeding under their true names.

If defendants' suggestion that they can testify in court wearing their gorilla masks (their June 28, 2004 Memo, p. 5) seems bizarre it is not because of its originality, but because the mundane court procedures for adjudicating legal rights and the ownership of property require direct and cross-examination of real persons with real addresses and attributes, real reputations for credibility, and public responsibility for their testimony. In the "balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings," *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir.1981), the showing made here falls far short of justifying an exception to the traditional practice.

Defendants' and proposed intervenors' motion to proceed anonymously or by pseudonym is denied.

So ordered.