# SUPREME COURT OF THE UNITED STATES

## DELAWARE STRONG FAMILIES *v.* MATTHEW DENN, ATTORNEY GENERAL OF DELAWARE, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 15–1234.　Decided June 28, 2016

The petition for a writ of certiorari is denied. JUSTICE ALITO would grant the petition for a writ of certiorari.

JUSTICE THOMAS, dissenting from the denial of certiorari.

First Amendment rights are all too often sacrificed for the sake of transparency in federal and state elections. "'Sunlight,'" this Court has noted, is "'the best of disinfectants'" in elections. See *Buckley* v. *Valeo*, 424 U. S. 1, 67 (1976) (*per curiam*) (quoting L. Brandeis, Other People's Money 62 (1933)). But that is not so when "'sunlight'" chills speech by exposing anonymous donors to harassment and threats of reprisal. See *Citizens United* v. *Federal Election Comm'n*, 558 U. S. 310, 482–484 (2010) (THOMAS, J., concurring in part and dissenting in part); see also, *e.g., NAACP* v. *Alabama ex rel. Patterson*, 357 U. S. 449, 462–463 (1958). This case presents the opportunity to clarify that the State's interest in transparency does not always trump First Amendment rights. I respectfully dissent from the denial of certiorari.

## I

In 2012, Delaware Strong Families, a tax-exempt nonprofit organization, produced a "General Election Values Voter Guide" for Delaware citizens. The voter guide listed all candidates running for Congress or the state legislature and indicated whether the candidate "[s]upport[ed]," "[o]pposed," or was "[u]ndecided" about various issues. The guide covered issues ranging from candidates' posi-

tions on "[g]iving tax dollars to Planned Parenthood" to "legalizing Internet gambling." Delaware Strong Families, 2012 General Election Values Voter Guide 1–4, online at http://www.delawarestrong.org/wp-content/uploads/2012/10/ 2012-C3-General-Election-Voter-Guide-v5.pdf (as last visited June 23, 2016).

As Delaware Strong Families prepared to produce a similar voter guide for the 2014 election cycle, it filed this federal suit challenging Delaware's newly enacted disclosure requirements that would require it to reveal many of its donors if it disseminated the voter guide. The Delaware Election Disclosures Act requires "[a]ny person other than a candidate committee or political party" who spends more than $500 on "third-party advertisements . . . during an election period [to] file a third-party advertisement report" with the State Commissioner of Elections. Del. Code Ann., Tit. 15, §8031(a) (2015). A "'third-party advertisement'" includes "electioneering communication[s]" that "[r]efe[r] to a clearly identified candidate" and are "publicly distributed within 30 days before a primary election . . . or 60 days before a general election to an audience that includes members of the electorate for the office sought by such candidate." §§8002(10)(a), 8002(27). The voter guide fits that description. Accordingly, Delaware Strong Families must report the names, addresses, and contribution amounts of not only those donors who earmarked their donations for the creation of the voter guide, but also any and all donors who contributed more than $100 to the nonprofit during the election period. §8031(a)(3); see *Delaware Strong Families* v. *Attorney General of Delaware*, 793 F. 3d 304, 307 (CA3 2015) ("Disclosure is not limited to individuals who earmarked their donations to fund an electioneering communication").

The District Court enjoined the Act. The court observed that the Act required disclosure of "virtually every communication made during the critical time period, no mat-

ter how indirect and unrelated it is to the electoral process," including a presumptively neutral voter guide published by a presumptively neutral, tax-exempt, non-profit entity. *Delaware Strong Families* v. *Biden*, 34 F. Supp. 3d 381, 395 (Del. 2014). The court concluded that the relationship between the Act's purpose and the First Amendment burdens it imposed was "too tenuous." *Ibid.*

The United States Court of Appeals for the Third Circuit reversed. The court held that the Act's far-reaching disclosure requirements were sufficiently tailored to Delaware's asserted interest in an "informed electorate." 793 F. 3d, at 309–312. It sufficed that the Act required only those organizations that disseminated communications during "the applicable 'election period'" to disclose their donors. *Id.,* at 312.

## II

This Court has long considered disclosure requirements as "the least restrictive means of curbing the evils of campaign ignorance and corruption." *Buckley*, 424 U. S., at 68. At the same time, the Court has recognized that "[i]t is undoubtedly true" that mandatory disclosure of donor names "will deter some individuals who otherwise might contribute" and "may even expose contributors to harassment or retaliation." *Ibid.* These First Amendment harms justify eliminating disclosure requirements altogether. But even under this Court's existing precedents, Delaware's scheme is far broader than those the Court has previously upheld.

In my view, it is time for the Court to reconsider whether a State's interest in an informed electorate can ever justify the disclosure of otherwise anonymous donor rolls. As the Court said in *McIntyre* v. *Ohio Elections Comm'n*, 514 U. S. 334 (1995), "[t]he simple interest in providing voters with additional relevant information does not justify a state requirement that a writer make statements

or disclosures she would otherwise omit." *Id.,* at 348; see also *id.,* at 360–367 (THOMAS, J., concurring in judgment) (discussing tradition of anonymous speech during the founding era); *Doe* v. *Reed*, 561 U. S. 186, 240 (2010) (THOMAS, J., dissenting) ("[A] long, unbroken line of this Court's precedents holds that privacy of association is protected under the First Amendment"). The same rule should apply here. "Disclaimer and disclosure requirements enable private citizens and elected officials to implement political strategies *specifically calculated* to curtail campaign-related activity and prevent the lawful, peaceful exercise of First Amendment rights." *Citizens United*, 558 U. S., at 483 (opinion of THOMAS, J.) (emphasis in original); *McConnell* v. *Federal Election Comm'n*, 540 U. S. 93, 275–276 (2003) (THOMAS, J., concurring in part and dissenting in part); see also *NAACP,* 357 U. S., at 462 (noting that disclosure of members' names would expose them "to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility"). Given the specter of these First Amendment harms, a State's purported interest in disclosure cannot justify revealing the identities of an organization's otherwise anonymous donors.

Even if the Court were to evaluate the Disclosures Act by applying its existing framework, the Delaware scheme sweeps far broader than those the Court has previously considered. Disclosure requirements "cannot be justified by a mere showing of some legitimate governmental interest." *Buckley,* 424 U. S., at 64. Instead, disclosure requirements must withstand "exacting scrutiny." *Ibid.* Exacting scrutiny requires the State to establish that "the disclosure requirement" is "substantial[ly] relat[ed]" to "a sufficiently important governmental interest." *Citizens United, supra,* at 366–367 (internal quotation marks omitted); see also *Buckley, supra,* at 64–65 (same).

Here, the Third Circuit's "exacting scrutiny" analysis

compared the finer details of the Disclosures Act with the federal disclosure requirements. 793 F. 3d, at 309–312. Delaware's scheme as applied to Delaware Strong Families, however, bears little resemblance to the federal disclosure requirements that this Court has considered. In *Buckley* v. *Valeo*, for example, the Court construed a federal disclosure provision to require disclosure only "for communications that expressly advocate the election or defeat of a clearly identified candidate" to "insure that the reach of the [federal provision wa]s not impermissibly broad." 424 U. S., at 80 (footnote omitted). No one contends that Delaware Strong Families' voter guide expressly advocates for a particular candidate. Later in *McConnell* v. *Federal Election Comm'n*, the Court upheld amended federal disclosure requirements as applied to the electioneering communications of "corporations and labor unions . . . fund[ing] broadcast advertisements designed to influence federal elections . . . while concealing their identities from the public" by "hiding behind dubious and misleading names." 540 U. S., at 196–197 (internal quotation marks omitted). The record here contains no evidence of such "abuse" or "tactics." *Ibid.* (internal quotation marks omitted). And finally in *Citizens United* v. *Federal Election Comm'n*, the Court concluded that federally required disclosure "avoid[ed] confusion by making clear" to voters that advertisements naming then-Senator Hillary Clinton and "contain[ing] pejorative references to her candidacy" were "not funded by a candidate or political party." 558 U. S., at 368. But today's case involves no such "pejorative references"—indeed, if the voter guide were anything but neutral, it would threaten Delaware Strong Families' tax-exempt status.

Perhaps a mere "interest in an informed electorate," 793 F. 3d, at 310, might justify a more tailored regime (though I have my doubts). But here, the Third Circuit failed to ask how that interest could justify mandatory disclosure

merely because an organization mentions a candidate's name.

*          *          *

In my view, the purported government interest in an informed electorate cannot justify the First Amendment burdens that disclosure requirements impose. See *Citizens United, supra,* at 483 (opinion of THOMAS, J.). But if the Court is determined to stand by its "exacting scrutiny" test, then this case is its proving ground. By refusing to review the constitutionality of the Delaware law, the Court sends a strong message that "exacting scrutiny" means no scrutiny at all. I respectfully dissent from the denial of certiorari.