# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WALKER, EWING,[1] PARKER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Chief Warrant Officer Two ANDRE X. TATE**
**United States Army, Appellant**

ARMY 20200590

Headquarters, 82nd Airborne Division
J. Harper Cook, Military Judge
Colonel Jeffrey S. Thurnher, Staff Judge Advocate

For Appellant: Robert Feldmeier, Esquire (on brief and reply brief).

For Appellee: Lieutenant Colonel Jacqueline J. DeGaine, JA; Major Chase C. Cleveland, JA; Captain Vy T. Nguyen, JA (on brief).

8 March 2024

---

MEMORANDUM OPINION ON FURTHER REVIEW

---

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

EWING, Judge:

This is our second opinion in this case. Previously, we held that we did not have jurisdiction over this appeal because The Judge Advocate General (TJAG) had not taken personal action on appellant's petition under Article 69, UCMJ. *United States v. Tate*, ARMY 20200590, 2022 CCA LEXIS 543 (Army Ct. Crim. App. 9 Sep. 2022) (mem. op.) ("*Tate I*"). Following *Tate I*, TJAG personally denied appellant relief. We now hold that we have jurisdiction to reach the merits of appellant's claims, and that one of appellant's claims warrants both discussion and relief. Specifically, we find that the government's trial evidence was insufficient to show appellant's membership in a criminal gang and therefore set aside his convictions for violating Articles 92 and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 933 [UCMJ]. Appellant does not contest his separate conviction

---

[1] Judge EWING decided this case on active duty.

for assaulting his wife in violation of Article 128, UCMJ, and we affirm that conviction and resulting sentence.[2]

## JURISDICTION

We discussed the background of appellant's court-martial conviction and sentence in *Tate I* and need not repeat that here, other than to the extent necessary to address appellant's assignments of error herein. *Tate I*, 2022 CCA LEXIS 543, at *1-2.

But first we return to jurisdiction, without which we "cannot proceed at all," because jurisdiction is the prerequisite to our "power to declare the law." *Roberts v. United States*, 77 M.J. 615, 616 (Army Ct. Crim. App. 2018) (cleaned up).

We held in *Tate I* that we did not have jurisdiction to hear appellant's appeal because appellant's sentence fell below the threshold triggering automatic review and TJAG had, at that time, not taken personal action on appellant's petition under Article 69, UCMJ. *Tate I*, 2022 CCA LEXIS 543, at *7-13. Following *Tate* I, TJAG took personal action in appellant's case and denied appellant relief under Article 69. TJAG's personal action thus resolves the *Tate I* jurisdictional question.

We now address a second jurisdictional issue we left open in *Tate I*, where we were grappling with an updated version of Article 69. While this question is important here, the landscape has *changed again* since *Tate I*, with the new version of Article 66 allowing for any defendant convicted of any offense at a general or special court-martial—regardless of sentence—to petition this court directly for appellate review. *See* UCMJ art. 66, 10 U.S.C. § 866 (2018 & Supp. IV 2023); Pub. L. No. 117-263, §544(d), 136 Stat. 2395, 2583-84 (2022) (stating jurisdictional amendments to Article 66 are only applicable to cases submitted to a Court of Criminal Appeals on or after 23 December 2022). This will greatly simplify the jurisdictional inquiry for future cases and make the following analysis largely a legacy issue.

But as to the jurisdictional scheme applicable here, we noted the following issue in *Tate I*:

> Article 69(d) requires a TJAG "action" under Article 69(c) to vest this court with jurisdiction. But all of the "actions" listed in Article 69(c) are *favorable* to an appellant, giving rise to the question of whether a *denial* of relief (as here)

---

[2] Appellant was acquitted of one specification of violating Article 112a, UCMJ, for wrongful possession of steroids.

> constitutes a TJAG "action" under Article 69(c), even if personally acted on by TJAG.

*Tate I*, 2022 CCA LEXIS 543, at *13 n.9.

Specifically, Article 69(c)(1)(A) provides that in cases reviewed under Article 65, TJAG:

> [M]ay set aside the findings or sentence, in whole or in part, on the grounds of newly discovered evidence, fraud on the court, lack of jurisdiction over the accused or the offense, error prejudicial to the substantial rights of the accused, or the appropriateness of the sentence.

But what if TJAG does none of these things, but rather, as here, *denies* relief? Could it be that Article 69 provides this court with jurisdiction where TJAG takes some favorable action on an appellant's case, but *does not* provide jurisdiction when TJAG denies relief?

While this is a possible black letter reading of the statute, we do not believe it is the best reading, for at least two reasons. First, it would be deeply counter-intuitive for Congress to have provided an appellant who receives favorable action from TJAG the ability to petition for additional appellate review but deny that same ability to an appellant to whom TJAG denies relief. This is particularly true in light of the Report of the Military Justice Review Group —the group responsible for the bulk of the changes Congress ultimately adopted in the Military Justice Act of 2016—which explained that the purpose of this change to Article 69 was to "improve the appellate process by providing an accused who believes that his case includes legal error *with an opportunity to apply directly to a court for appellate review*." Report of the Military Justice Review Group, Part I: UCMJ Recommendations, at 636 (last visited 23 Feb. 2024), https://jsc.defense.gov/Portals/99/MJRG%20Part%201.pdf.

Second, we believe it is implicit in the language of Article 69(c) that while TJAG *may*, in his discretion, provide one of the listed favorable actions, he *may likewise deny relief* under that same provision and thus trigger this court's discretionary jurisdiction. This reading is buttressed by the fact that Article 69 elsewhere uses the term "decision" when referring to TJAG's action. *See* UMCJ art. 69(d)(2)(B)(ii) ("the decision"). We therefore hold that TJAG's personal action— either to grant or deny relief—under Article 69(c) is the jurisdictional prerequisite to this court's review of courts-martial like this one.

Thus we hold that we have jurisdiction to proceed to the merits of appellant's claims.

## LEGAL SUFFICIENCY

Appellant's convictions for violating Article 92, failure to obey an order or regulation, and Article 133, conduct unbecoming an officer, rested on his allegedly unlawful membership in the Outcast Motorcycle Club ("OMC"). Appellant contends that the government did not prove at trial that his membership in this group constituted membership in a "criminal gang" as defined by Army regulation and, as such, the government's evidence for these two charges was legally insufficient. We agree.

Because our review is under Article 69 and not Article 66, we review for legal sufficiency only. Article 69(e) provides that, in cases where we grant review of appellant's petitions under Article 69(d), we "may take action only with respect to matters of law." UCMJ art. 69(e).

We review questions of legal sufficiency de novo, and ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wilson*, 76 M.J. 4, 6 (C.A.A.F. 2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (citation omitted).

### A. Article 92

At the times relevant here, Army Regulation 600-20, Army Command Policy, provided that "[p]articipation in criminal gangs . . . by Army personnel is inconsistent with the responsibilities of military service," and that "Soldiers are prohibited from participation in gangs or their activities." Army Reg. 600-20, Personnel-General: Army Command Policy, para. 4-12(g) and (g)(3) (6 Nov. 2014) [AR 600-20].[3] The regulation defines "[c]riminal gangs and activities" as "ones that advocate the planning or commission of one or more criminal offenses, by persons who share a group identity, and may share a common name, slogan . . . clothing style or color." AR 600-20, para. 4-12(g)(1).

Appellant does not contest his membership in OMC, nor does he contest that the group shared an identity, name, and clothing style. Thus, for Article 92 sufficiency purposes, the question is whether the government proved OMC was a group that "advocate[d] the planning or commission of one or more criminal offenses" and thus constituted a "criminal" gang as defined by the Army Regulation.

---

[3] While the regulation refers first to "criminal gangs" and then later only to "gangs," the government conceded at oral argument in this case that the regulation prohibited soldiers from participating only in "criminal" gangs as defined by the regulation. We agree, as otherwise the regulation would sweep far too broadly—e.g., the "Tuesday Morning PT Gang" or the "JAG Officers' Coffee Gang."

4

Simply put, the government failed to prove that OMC met this regulatory definition. The government presented no evidence of appellant advocating, planning, or committing any crime associated with his OMC membership. Moreover, the government presented no evidence at trial of *any* OMC member committing *any* specific crime, nor did they provide evidence of any OMC member advocating for the commission of any specific crime. This was a strange way to go about proving that OMC was a criminal gang, as one would think it would have been pretty easy to give a couple of examples of OMC members committing crimes if they were doing so on a regular basis. The only specific OMC-related crime mentioned in the government's case was an instance in which an OMC member in South Carolina (where appellant had not been associated with the group) had himself been a murder *victim*, as opposed to a perpetrator.

The government did present copious evidence that appellant was an OMC member and wore OMC regalia, including the so-called "1%" patch. The government's expert testified that this patch, at least originally, referred back to a 1947 magazine article that labeled 99% of motorcycle riders as "good" and 1% as "outlaws." But that same expert said there were numerous ways to earn the 1% patch in a motorcycle group that did not involve committing crimes, and that the patches could be purchased on eBay. The government's expert also testified by responding "yes" to a single leading question of whether the Fayetteville OMC chapter had a "reputation for violent acts." But (1) the government did not show that appellant was ever associated with the Fayetteville OMC chapter; (2) the government's expert testified that he did not know what information the Fayetteville police knew about the OMC chapter; and (3) the government put no meat on the bone regarding what the alleged "violent acts" were, and whether they were criminal in nature.[4] On the opposite side of the proof ledger, the defense presented the OMC bylaws which stated that committing a crime was grounds for expulsion from the club, and appellant fully admitted he was a member of the club but denied any criminal involvement related to his club membership.[5]

---

[4] While "violent acts" could suggest violent crimes, this is not necessarily so, as certain lawful activities including boxing and football could be considered "violent." Appellant makes the point that the United States Army could be considered a "criminal gang" if all that was required was "violent acts."

[5] The government's expert also testified that OMC appeared in a National Crime Information Center (NCIC) national database of criminal gangs. Appellant raises a free-standing Confrontation Clause claim regarding the admission of this testimony. We need not address that claim here, for two reasons. First, in this court, the government no longer relies on this database information on the question of legal sufficiency. See Appellee's Br. 9, n.5 (14 Sep. 2023). Second, even if we were to

(continued . . .)

Unlike other inherently criminal activities, associating with groups of people based on common interests, like riding motorcycles, is presumptively lawful. *See, e.g., NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460-61 (1958) (holding that the First Amendment protects freedom of association). Thus, the Army Regulation here delineates lawful from unlawful associations for those in military service. In this context, the government must "turn square corners" to show that the conduct at issue falls on the unlawful side of this line. *Niz-Chaves v. Garland*, 141 S. Ct. 1474, 1486 (2021). The government's evidence that appellant violated Article 92 did not meet this standard and was legally insufficient to sustain his conviction. In so holding, we take no position on whether OMC is actually a "criminal gang" as defined by the Army regulation or any other definition. Rather, we simply hold that, even if it is, the government did not prove it here.

*B. Article 133*

The sufficiency inquiry into appellant's Article 133 conviction is similar. The court-martial found appellant guilty by exceptions and substitutions of violating Article 133 for "promot[ing], support[ing], and endors[ing]" OMC, "which conduct constituted conduct unbecoming an officer." Article 133 has two elements: "1) that the accused did or omitted to do certain acts; and 2) that, under the circumstances, these acts or omissions constituted conduct unbecoming an officer." *United States v. Franks*, 76 M.J. 808, 819 (Army Ct. Crim. App. 2017). In the face of this circularity, we have explained that the "focus of Article 133 . . . is the effect of the accused's conduct on his status as an officer." *Id.*

In its response to appellant's Rule for Courts-Martial 917 motion at trial on the Article 133 charge, the government argued that "one of the ways that conduct is unbecoming is if it's lawless[]." While this may be true, as we set out above, the government failed to show that appellant's OMC membership was, in fact, contrary to law. Thus, they could only sustain an Article 133 conviction if his OMC membership was otherwise conduct unbecoming an officer. The government's case was wholly devoid of any evidence that appellant's OMC membership somehow

---

(. . .continued)
consider the database information, we note that, according to the government's own expert at trial, (1) the database's definition of criminal gang, of "three or more individuals with common activity and criminal acts or delinquent conduct" was different from the applicable regulatory definition here and was concerned with ensuring officer safety when interacting with gang members; (2) the information had been last "validated" in the database in 2018; (3) the database information related to the Fayetteville chapter of OMC with which appellant was not associated; and (4) the government's testifying expert did not know any of the underlying information the Fayetteville police used to validate OMC as a criminal gang in the database.

detrimentally affected his "status as an officer" within his unit or otherwise. *Franks*, 76 M.J. at 819. As such, we likewise find that the government's evidence was legally insufficient to sustain a conviction for Article 133.

## THE SENTENCE

Appellant's overall sentence was six months' confinement and a reprimand. Segmented sentencing rules applied at appellant's court-martial, and the military judge sentenced appellant to the full six months of confinement for assaulting appellant's wife in violation of Article 128, UCMJ. The court did not sentence appellant to any confinement for either the Article 92 or the Article 133 convictions. Appellant has never challenged his assault conviction on appeal.

In light of this backdrop we find that we are able to reassess appellant's sentence. *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013); *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). We set aside appellant's reprimand and affirm his six months of confinement.

## CONCLUSION

Appellant's convictions for Charge I and its specification and Charge IV and its specification are SET ASIDE and DISMISSED. The remaining finding of guilty is AFFIRMED. We affirm only so much of the sentence as provides for confinement for six months. All rights, privileges, and property of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision are ordered restored. *See* UCMJ art. 75(a).

Senior Judge WALKER and Judge PARKER concur.

FOR THE COURT:

JAMES W. HERRING, JR.,
Clerk of Court

7